## EL PUEBLO *v.* ROSADO.

### APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 258.—Resuelto en abril 12, 1911.

PRUEBAS—CONFESIÓN DEL ACUSADO.—La confesión extrajudicial del acusado es admisible como prueba en contra de él, si ha sido hecha voluntariamente, sin violencia, intimidación, amenazas, halagos o promesas de clase alguna que pudieran influir en ella.

ID.—CORPUS DELICTI—ASESINATO.—En casos de asesinato la confesión del acusado no constituye prueba del *corpus delicti*, ni puede admitirse como evidencia tendente a probar la culpabilidad del acusado, cuando la existencia del delito no ha quedado establecida por prueba de otra naturaleza.

ID.—INSTRUCCIONES DE LA CORTE—HOMICIDIO VOLUNTARIO E INVOLUNTARIO—APELACIÓN.—Cuando la prueba practicada establece claramente el delito de asesinato, no es necesario instruir al jurado con respecto al delito de homicidio, pero aun en el caso de que la corte deba dar al jurado tal instrucción, su omisión no justificaría la revocación de la sentencia, por cuanto es regla general que si el acusado considera que la corte debe instruir al jurado sobre una cuestión esencial, debe solicitar dicha instrucción, y tomar excepción en caso de que sea denegada, para en su día poder impugnar las instrucciones por deficientes.

ID.—CASOS EN QUE LA MUERTE SE OCASIONA AL PERPETRARSE O INTENTARSE LA PERPETRACIÓN DE ALGÚN ROBO.—Si la muerte se consume al perpetrarse o intentarse la perpetración de algún robo, entonces no es necesario probar la deliberación y premeditación, pues si se realiza tal condición, el asesinato tiene que ser de primer grado, y una instrucción a este efecto no es errónea.

ID.—CIRCUNSTANCIAS ATENUANTES O QUE EXCUSEN O JUSTIFIQUEN EL HECHO.—Siendo la confesión extrajudicial del acusado en este caso, al efecto de que había dado muerte a la víctima en defensa de su defensa, como el jurado tiene el derecho de aceptar o rechazar tal exculpación, es procedente una instrucción de la corte en sentido de que, una vez probado que la muerte fué consumada por el acusado, es de su incumbencia la prueba de circunstancias atenuantes o que excusen o justifiquen el hecho, a menos que la prueba de cargo tienda a demostrar que el delito es de homicidio.

ID.—INSTRUCCIONES SOBRE PUNTOS QUE NO SEAN PERTINENTES.—El hecho de instruir al jurado sobre puntos que no sean pertinentes al caso que se está juzgando, nunca constituiría error suficiente a justificar la revocación de la sentencia, cuando aparezca que no se han perjudicado los derechos del acusado.

ID.—PRUEBA CIRCUNSTANCIAL.—Con respecto a la siguiente instrucción se resuelve que el jurado no ha podido ser inducido a error en la apreciación de la prueba: Esta prueba (la circunstancial) puede consistir en admisiones hechas por el acusado * * * y en fin, cualquier acto, declaración o circunstancia admitidas como prueba, que tiendan a enlazar al acusado con la comisión del crimen. La corte instruye al jurado que para declarar culpable al acusado por evidencia circunstancial solamente, es necesario, no sólo que todas las circunstancias concurran para demostrar que él cometió el crimen de que

se le acusa, sino que ellas sean incompatibles con cualquiera otra conclusión razonable.

Id.—Apreciación de la Prueba.—El jurado es el único juez de los hechos y de la veracidad de los testigos. Ellos los ven y los oyen testificar y son los únicos que pueden juzgar con respecto a su credibilidad, y solamente en casos excepcionales, como cuando un jurado comete abusos manifiestos del poder en este respecto, el tribunal sentenciador o el Supremo anularán el veredicto y concederán nuevo juicio. Una instrucción con respecto a las facultades del jurado en este sentido es correcta.

Id.—Duda Razonable.—La siguiente instrucción se resuelve que es correcta: La duda razonable es aquel estado de la causa que luego de haberse comprobado y considerado sobre todas las pruebas practicadas, deja al jurado en aquella condición mental que le impide estar convencido respecto a la verdad de la acusación.

"Si Vds. tienen una duda razonable de que el acusado es culpable del delito de asesinato en primer grado o segundo grado, entonces es el deber de Vds. declararle culpable del delito de asesinato en segundo grado." Se resuelve que tal instrucción no es errónea, pues no es posible interpretarla en el sentido en que lo hace la defensa del acusado, o sea, de que si el jurado tenía dudas de la culpabilidad del acusado, debía declararlo culpable de asesinato en segundo grado, ya que tal interpretación está en pugna con el sentido lógico y natural de la instrucción y con las demás instrucciones de la corte al jurado, siendo claro y manifiesto el sentido de que si el jurado tenía duda con respecto al grado del delito, debía declarar al acusado culpable del segundo grado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rafael Martínez Alvarez.*

Abogado del apelado: *Mr. Jesús M. Rossy, Fiscal.*

El Juez Presidente Sr. Hernández, emitió la opinión del tribunal.

El presente caso se originó y decidió en la Corte de Distrito de Ponce, ante la cual se presentó por el Fiscal de dicha corte en 6 de enero de 1908 acusación contra Juan Rosado Colón por el delito de asesinato en primer grado, cometido como sigue:

"El citado Juan Rosado Colón en la noche del domingo 8, al lunes 9 de diciembre de 1907, en la carretera que conduce desde Guayama a Ponce, en el barrio de Arús, dentro del término municipal de Juana Díaz, de Ponce, P. R., *con malicia premeditada, alevosa y deliberadamente, y demostrando tener un corazón pervertido y maligno, dió muerte ilegal a Francisco Cruz y Rivera conocido por Frasco,* con intención de robarle el dinero que tenía, infiriéndole con

instrumento contundente una herida en la región fronto-temporo-parietal derecha, que ocasionó una gran fractura conminuta de dicha región con hundimiento de los huesos fracturados, que fué la que le produjo la muerte, y otras muchas más, de la misma naturaleza, en la cara y región frontal derecha superior.''

Celebrado el juicio, el acusado fué declarado culpable y condenado a muerte por delito de asesinato en primer grado, pero contra esa sentencia interpuso recurso de apelación para ante esta Corte Suprema, que la revocó por la suya de 4 de noviembre de 1909, ordenando la celebración de nuevo juicio.

El nuevo juicio tuvo lugar en 24 de febrero de 1910, y el jurado emitió el siguiente veredicto:

''En la Corte de Distrito del Distrito Judicial de Ponce, P. R. *El Pueblo de Puerto Rico* v. *Juan Rosado Colón.* Asesinato en primer grado. Veredicto. El Jurado, despúes de haber deliberado en este caso, formula su veredicto declarando al acusado Juan Rosado Colón culpable del delito de asesinato en primer grado. Ponce, P. R., febrero 24 de 1910. S. Barnés, Presidente del Jurado.''

En vista del veredicto expresado, la corte declaró a Juan Rosado Colón convicto del delito de asesinato en primer grado, y con fecha 28 del mismo mes dictó sentencia, condenándolo a sufrir la pena de muerte.

Contra esa sentencia, interpuso el acusado recurso de apelación, y elevada la transcripción de autos, como venciera el término sin que se hubiera personado en autos, este tribunal designó para su defensa al abogado Don Rafael Martínez Alvarez, quien, con verdadero celo, procedió al desempeño de su noble cometido, presentando un alegato escrito e informando después oralmente en apoyo del recurso interpuesto.

La representación del apelante funda el recurso en los siguientes motivos:

''Que el veredicto es contrario a la prueba practicada, habiendo por tanto, error en la apreciación de la misma; que ha existido igual

error en las instrucciones de la corte al jurado, y que el veredicto rendido por el jurado es un veredicto informal.''

Como un resumen de las consideraciones que hace el apelante al desarrollar el primer motivo del recurso, tomamos de su alegato lo siguiente:

''Como se ve, la única evidencia en contra del acusado, sobre la que descansa la acusación, es la alegada confesión del acusado a los testigos expresados, y es un principio muy general y elemental que el *corpus delicti* debe establecerse antes de que las confesiones del acusado puedan ser consideradas como tendentes a demostrar el hecho al cual ellas van relacionadas. Confesiones solamente, no son suficientes para establecer el cuerpo del crimen. En casos de asesinatos, la producción del cadáver no establece de por sí el *corpus delicti;* establecerá el *corpus,* pero no el *delicti,* y pruebas del *corpus* sin pruebas del delito unidas a las confesiones del acusado no son suficientes para establecer una convicción, puesto que debe existir otra evidencia que demuestre la comisión del crimen antes de que las confesiones del acusado sirvan de algo. Es indudable que la apariencia del cadáver, la naturaleza de las heridas, la evidencia o no de la lucha, las circunstancias que rodearon al suceso, pueden indicar que un crimen se ha cometido, pero debe presentarse prueba para demostrar el delito independiente del cadáver y que conecte al acusado con el crimen, de una naturaleza completamente distinta a la confesión del acusado. Nada existe en el récord que tienda a demostrar que el acusado cometió el delito imputádole, excepto su alegada confesión, luego es seguro que el jurado consideró la confesión en determinar si el *corpus delicti* había sido suficientemente probado, lo cual es *erroneus.*''

Las anteriores alegaciones tienden a demostrar la infracción del artículo 206 del Código Penal, que dice así:

''Ninguna persona podrá ser convicta de asesinato u homicidio, a menos que la muerte de la persona que se alegare haber sido muerta, y el hecho de la muerte que se alegare haber sido causada por el acusado, resultaren probados como actos independientes; aquélla, por medio de pruebas directas y éste, de modo que no haya lugar a duda razonable.''

Tales preceptos han tenido cumplida aplicación en el presente caso, pues la muerte de Francisco Cruz Rivera aparece probada por prueba directa, y la responsabilidad del acusado, como autor de esa muerte, se ha demostrado sin lugar a duda alguna razonable.

Véamoslo, haciendo una reseña de las pruebas:

El día sabado 7 de diciembre del año 1907, Francisco Cruz, quien vivía en el barrio de Capitanejo, de Ponce, y tenía a su cargo un carro de bueyes perteneciente a Antolina Lao, con el que hacía viajes de Ponce a Guayama, salió para Ponce en busca de unas provisiones, y regresó a la casa de la Antolina, donde vivía, entre dos y tres de la tarde, con el carro cargado, saliendo la misma tarde para Guayama, sin que hubiera regresado en la madrugada del lunes, según acostumbraba.

Antonio Grau, comerciante de Guayama, recibió las provisiones que en el carro condujo Francisco Cruz, procedentes de Ponce, entre 8 y 9 de la mañana del día siguiente, 8 de diciembre citado, y pagó a aquél cinco dol'ars por la conducción, delante de un muchacho que le servía de cuartero, y que se le pareció al acusado.

Entre diez y once del mismo día 8 de diciembre, estuvieron Francisco Cruz y el acusado en el cafetín de Lino Mandri en Guayama, donde ambos tomaron café, que pagó Cruz, habiéndose despedido ambos para Ponce con el carro vacío, sin tener rencilla alguna.

Serían las 4 de la tarde del mismo día 8 de diciembre, encontrándose Juan Cruz Franco en el barrio "Coquí" de Salinas, donde era Policía Insular, vió al acusado en compañía de un carretero, los cuales subieron a una fonda y comieron juntos, habiendo pagado el carretero.

Ya de noche, en el propio día 8 de diciembre, entre 7 y 8, el acusado y Francisco Cruz estuvieron comiendo en la fonda de José de Jesús Burgos, de Santa Isabel, habiendo pagado también Cruz el gasto, y después de comer montaron los dos en el carro y se fueron a Ponce, sin tener disgusto alguno.

Elena Torres fué la que sirvió la cena a Francisco Cruz y al acusado en la fonda de Santa Isabel.

En la mañana del siguiente día, 9 de diciembre, el Teniente de la Policía Insular, José C. Jiménez, que prestaba servicio en Juana Díaz, fué avisado de que en las inmediaciones de la carretera, barrio de Arús y frente a la finca denominada "La Potala," había un cadáver, de lo que dió conocimiento al juez de paz de dicho pueblo, que lo era Don Pedro Monclova; y allí, en efecto, fué encontrado el cadáver de Francisco Cruz, en posición boca arriba, con la cabeza y la cara completamente destrozadas y el bolsillo izquierdo del pantalón al revés, casi arrancado, pendiente de un colgajo, habiendo al lado del bolsillo un centavo.

El doctor Ramón A. de Torres practicó la autopsia del cadáver, y según la opinión pericial, debieron habérsele dado de ocho a diez o doce golpes para producir los destrozos que presentaba en las regiones de la cara, convertida en una masa informe, con las piezas dentarias fuera, siendo las heridas todas mortales por necesidad y causadas por un cuerpo contundente, resistente y muy duro, como una estaca, sin que hubiera habido lucha entre el agresor y la víctima, pues en tal caso hubiera presentado el cadáver manchas de sangre en las manos o en el resto del cuerpo.

En el carro, que era de dos ruedas y estacas, había un machete y una garrocha, y faltaba la estaca que se denomina la "Confianza" que es fuerte, pequeña, con un suncho o aro de hierro, y debía servir para apretar las otras.

No cree el doctor Torres que los destrozos hechos a la víctima lo fueron con la garrocha de que se deja hecho mérito, y sí con un cuerpo resistente y grueso como una estaca.

Pocos días después del hallazgo del cadáver, fué detenido como presunto culpable Juan Rosado Colón, quien, después de haber negado conocer al carretero Francisco Cruz y haber estado con éste en Guayama, manifestó al Teniente Jiménez que tenía que decirle una cosa, y era que él había sido quien había dado al carretero con una garrocha, porque el carretero

había querido darle al salir de Santa Isabel, lo que había hecho en defensa de su defensa.

También manifestó el acusado a Rosendo Quesada, al preguntarle éste por qué había matado al carretero; que si lo había hecho, había sido en defensa de su defensa. A Pedro Iglesias González, repórter- del periódico "El Aguila" de Ponce, quien le preguntó por el motivo de haber dado muerte al carretero, contestó el acusado que el carretero estaba embriagado, y venía provocándolo, por lo que perdió la paciencia, cogió una estaca y le dió unos golpes. Don Pedro Monclova oyó la manifestación hecha por el acusado de que le había dado al carretero porque éste había querido pegarle, y que lo había hecho en defensa de su defensa, con una garrocha.

Como se ve, la muerte de Francisco Cruz Rivera se ha probado por el hallazgo de su cadáver en la forma ya descrita, con independencia de toda otra prueba concerniente a la responsabilidad del acusado. Que el móvil determinante de esa muerte fué el robo, lo indica el hecho de que Francisco Cruz recibió en Guayama de manos de Antonio Grau cinco dollars que no han aparecido, y que indudablemente le fueron extraídos de uno de los bolsillos del pantalón, bolsillo que casi le fué arrancado, según la inspección del cadáver. Que Juan Rosado Colón es el responsable del crimen cometido en la persona de Cruz, lo están revelando el hecho de haber estado viajando juntos la misma noche en que Cruz fué muerto, y la confesión extrajudicial del acusado, admisible como prueba, por haber sido hecha voluntariamente sin violencia, intimidación, amenazas, halagos o promesas de clase alguna que pudieran influir en ella.

Admitimos que la confesión no constituye prueba del *corpus delicti* en casos como el presente, ni puede admitirse como evidencia en contra del acusado, cuando la existencia de delito no ha quedado establecida por prueba de otra naturaleza, pues así lo exige el artículo 206 del Código Penal; pero tal doctrina legal no puede invocarse con éxito en el presente caso, en que

la muerte de Francisco Cruz se ha probado por la invención de su cadáver y no por confesión del acusado.

No ha habido, pues, error en la apreciación de las pruebas, y hay que convenir en que el veredicto del jurado ha sido imparcial y justo.

Alega la parte apelante, en apoyo del segundo fundamento de su recurso, que el juez cometió error al no instruir al jurado acerca del homicidio voluntario e involuntario. Del examen que hemos hecho de la prueba practicada se desprende que tal instrucción era innecesaria en este caso, toda vez que la prueba claramente establece el delito de asesinato, y no vemos como hubiera podido emitirse un veredicto de homicidio (*People* v. *Haun,* 44 Cal., 100; *People* v. *Ah Wee,* 48 Cal., 239); pero aún estimando que la corte debiera instruir al jurado con respecto al homicidio en sus dos clases, su omisión no justificaría la revocación de la sentencia, por cuanto es regla general, que si el acusado considera que la corte debe instruir al jurado sobre una cuestión esencial, debe solicitar tal instrucción y tomar excepción en caso de que sea denegada, para en su día poder impugnar las instrucciones por deficientes.

*El Pueblo* v. *Robles,* resuelto en abril 25, 1906.

*El Pueblo* v. *Morales (Yare Yare)*, resuelto en junio 30, 1906.

*People* v. *Haun,* 44 Cal., 100.

*People* v. *Ah Wee,* 48 Cal., 239.

*People* v. *Northey,* 77 Cal., 632.

*People* v. *Fice,* 97 Cal., 460.

También se alega que el juez cometió error al dar al jurado las instrucciones que transcribimos a continuación:

"A. Ahora cuando la muerte es consumada al perpetrarse o intentarse la perpetración de algún robo, entonces hay prueba concluyente de la premeditación y deliberación por parte del matador. Y si ha sido consumada la muerte voluntaria, deliberada y premeditadamente, es contestado por el propio Código y el jurado no podrá menos que optar por declarar al acusado culpable de asesinato en primer grado.

"B. En los juicios por asesinato, una vez probado que la muerte ha sido consumada por el acusado, sería de la incumbencia del acusado el probar que han mediado circunstancias atenuantes o que excusen o justifiquen el hecho, a menos que la prueba aducida por la acusación tienda a demostrar que el crimen cometido sólo reviste el carácter de un homicidio. Pero el acusado estará obligado a producir únicamente aquellas pruebas que puedan hacer que surja en la mente de los jurados una duda razonable de su culpabilidad.

"C. Esta prueba (la circunstancia! o de indicios), puede consistir en admisiones hechas por el acusado   *   *   *   y en fin, cualquier acto, declaración o circunstancia admitidas como prueba, que tiendan a enlazar al acusado con la comisión del crimen. .

"D. La corte instruye a los Sres. del Jurado que Uds. son los únicos jueces de la verdad de los testigos y del peso y va'or que ha de darse a su testimonio. Al determinar el crédito que deben Uds. dar a un testimonio y el peso y valor que Uds. atribuyen a su declaración, Uds. deben tener en consideración la conducta y apariencia del testigo cuando declara.

"E. La duda razonable es una duda fundada en alguna razón, es una duda por la cual el jurado debe dar y tener una razón.

"F. Si Uds. tienen una duda razonable de que el acusado es culpable del delito de asesinato en primer grado o segundo grado, entonces es el deber de Uds. declararle culpable del delito de asesinato en segundo grado."

No encontramos que la corte cometiera error al dar al jurado la instrucción marcada con la letra "A," pues de sus términos no se desprende, según sostiene la parte recurrente, que tal instrucción se diera bajo el supuesto de que el robo estaba probado. Lejos de ello, dicha instrucción no es absoluta, sino hipotética; se refiere al caso de que la muerte se consume a' perpetrarse o intentarse el robo; y si se realiza tal condición, el asesinato tiene que ser de primer grado, según el artículo 201 de Código Penal. Es de notar que seguida

mente después de la instrucción, el juez instruyó al jurado
sobre los elementos integrantes del delito de robo, y entre sus
instrucciones sobre apreciación de la prueba se encuentra la
siguiente: "Este acusado se considera inocente, mientras no
se pruebe su culpabilidad fuera de duda razonable; y en caso
de existir duda de su culpabilidad, es el deber del jurado
declararle no culpable." Ante palabras tan explícitas y cla-
ras, no cabe afirmar que el juez supusiera y que el jurado pu-
diera dar por supuesto el intento del robo o su realización al
privarse de la vida a Francisco Cruz.

Tampoco es errónea la instrucción marcada con la letra
"B," por la razón que se alega de no haber establecido el
acusado prueba o defensa que envolviera la excusa o la justi-
ficación del acto imputádole.

Ciertamente que el acusado no estableció defensa alguna
que hiciera necesaria aquella instrucción; pero como una de
las pruebas más importantes presentadas en el juicio fué la
propia confesión extra-judicial del acusado al admitir ante
varios testigos que declararon en el juicio que él había da-
do muerte a Cruz en defensa, de su defensa, hay que
reconocer el derecho que tenía el jurado para aceptar o recha-
zar tal exculpación, y de ahí que el juez procediera correcta-
mente al instruir al jurado en relación con ese particular, ins-
trucción que se ajusta al precepto del artículo 247 del Código
de Enjuiciamiento Criminal. Además, el hecho de instruir
al jurado sobre puntos que no sean pertinentes al caso que se
está juzgando, nunca constituiría error suficiente a justificar
la revocación de la sentencia, cuando aparece que no se han
perjudicado los derechos del acusado.

Al considerar la instrucción letra "C," debemos hacerlo
en relación con la que le precede sobre calificación de las prue-
bas: "Existen, dijo el juez, dos clases de prueba recono-
cidas y admitidas en las cortes de justicia, y en virtud de cual-
quiera de las cuales los jurados pueden encontrar a un acu-
sado culpable de un crimen. Una de esas es el testimonio
directo o positivo de un testigo ocular respecto a la comisión

del crimen; siendo la otra prueba por testimonio de una serie
de acontecimientos entrelazados entre sí que tienden a señalar
de una manera suficientemente poderosa, la comisión de un
crimen por el acusado, la cual es conocida por prueba cir-
cunstancial o prueba de indicios. Esta prueba puede consistir
en admisiones hechas por el acusado; amenazas hechas con an-
terioridad a la comisión del crimen, tendentes a demostrar que
existía por parte suya animosidad contra el interfecto, y en
fin, cualquier acto, declaración o circunstancia, admitidas
como prueba que tienda a enlazar al acusado con la comisión
del crimen. Nada hay en la naturaleza de la prueba circuns-
tancial o de indicios que la haga menos segura que la otra
clase de prueba. La corte instruye al jurado que para de-
clarar culpable al acusado por evidencia circunstancial sola-
mente, es necesario, no solamente que todas las circunstancias
concurran para demostrar que él cometió el crimen de que
se le acusa, sino que ellas son inconsistentes de cualquiera
otra conclusión razonable. No es suficiente que las circuns-
tancias probadas coincidan, concuerden y hagan probable la
hipótesis buscada para establecer el objeto de la acusación,
sino que deben excluir cualquiera otra hipótesis fuera de la
culpabilidad.''

No vemos como en virtud de tan atinadas explicaciones
pudiera ser inducido a error el jurado en la apreciación de
las pruebas a virtud de la instrucción que la parte apelante
califica de errónea. Que la confesión del acusado hecha ante
testigos era admisible como prueba, es un punto legal resuelto
ya por esta corte en sentido afirmativo, al decidir los casos de
*El Pueblo* v. *Rivera, El Pueblo* v. *Kent, El Pueblo* v. *Martínez
et al.,* y *El Pueblo* v. *Flores Casiano,* decididos, respectiva-
mente, en 24 de junio de 1904, 5 de marzo de 1906, 4 de di-
ciembre de 1909 y 14 de febrero del corriente año. Y hace-
mos referencia a ese punto legal, porque, según resulta del
escrito de exposición del caso, en el acto del juicio fueron
excepcionadas las declaraciones de los testigos que depusie-
ron acerca de las manifestaciones hechas ante ellos por el

acusado, por más que en esta Corte Suprema no se hayan sostenido esas excepciones como fundamento del recurso.

La instrucción letra "D," lejos de ser errónea, se sostiene por el artículo 265 del Código de Enjuiciamiento Criminal, en cuanto preceptúa que las cuestiones de derecho se resolverán por el tribunal y las de hecho por el jurado.

"El jurado es único juez de los hechos y de la veracidad de los testigos. Ellos los ven y los oyen testificar y son los únicos que pueden juzgar con respecto a su credibilidad, y solamente en casos excepcionales, de los cuales hay muy raros ejemplos, cuando un jurado comete abusos manifiestos del poder en este respecto, el tribunal sentenciador o el Supremo anularán el veredicto y concederán nuevo juicio." Así lo digimos al resolver en 5 de mayo de 1904, en el caso de *El Pueblo* v. *Villegas,* y a esa doctrina se ajusta también la instrucción de que nos venimos ocupando. Pero es que esa instrucción para su apreciación debe considerarse completa, o sea tal cual se dió al jurado, y en esa forma dice así: "Al determinar el crédito que deben Vds. dar a un testimonio y el peso y valor que Vds. atribuyen a su declaración, Vds. deben tener en consideración la conducta y apariencia del testigo cuando declara, el interés del testigo si tuviere alguno en el resultado del juicio; los motivos del testigo en declarar; la relación del testigo o sus sentimientos en favor o en contra del acusado o el perjudicado; la probabilidad o improbabilidad de las manifestaciones del testigo; la oportunidad que el testigo tuvo para observar y ser influído sobre materias con respecto a las cuales tal testigo da su declaración y la inclinación de un testigo para hablar la verdad. Todo eso tomado en consideración con los hechos y circunstancias dadas en evidencia es incumbencia de Vds. para dar a cada testigo tal crédito y a cada uno el valor y el peso que Vds. consideren propio." La instrucción fué completa y no puede quejarse de ella el acusado:

La instrucción letra "E" expresiva de lo que debe entenderse por duda razonable o sea una duda por la cual el jurado

deba dar y tener una razón, debe completarse con las palabras que le preceden y que dijo el juez: "La duda razonable es aquel estado de la causa que luego de haberse comprobado y considerado sobre todas las pruebas practicadas, deja al jurado en aquella condición mental que le impide estar convencido respecto a la verdad de la acusación." Esa instrucción es correcta, y si aun le pareció defectuosa al acusado, pudo pedir aclaración de ella en momento oportuno, lo que no hizo para excepcionar en su caso la resolución de la corte y fundar en ella el recurso.

Finalmente, tampoco encontramos error en la instrucción letra "F," pues no es posible interpretarla en el sentido en que lo hace la defensa del acusado, o sea en el de que si el jurado tenía duda de la culpabilidad del acusado debía declararlo culpable de asesinato en segundo grado. Esa interpretación está en pugna con el sentido lógico y natural de la instrucción, y con la otra dada por el juez al jurado de que si tiene duda razonable de la culpabilidad del acusado, debe declararlo no culpable, resultando claro y manifiesto ser el sentido de la instrucción que si el jurado tenía duda con respecto al grado del delito de asesinato en 1°. o 2°. grado de que fuera culpable el acusado, debía declararlo culpable de asesinato en 2°. grado. No existe, pues, en la instrucción el error apuntado.

Por las razones expuestas, opinamos que procede la confirmación de la sentencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Asociados, MacLeary, Wolf y del Toro.

El Juez Asociado Sr. Aldrey no intervino en la resolución de este caso.