EL PUEBLO, DEMANDANTE Y APELADO, *v.* VÉLEZ ET AL., ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en causa por asesinato en segundo grado.

No. 2065.—Resuelto en julio 28, 1923.

ACUSACIÓN—INCONGRUENCIA—PRINCIPALES EN LA COMISIÓN DE DELITOS; QUIÉNES SON.—Cuando en una acusación contra varias personas complicadas en la comisión de un delito grave se imputa a ellas el acto físico principal y la prueba luego demuestra que fué ejecutado por otra persona, estableciéndose, sin embargo, que las personas acusadas intervinieron en la comisión del delito, no hay discrepancia entre la acusación y la prueba, ya que esas personas se consideran como principales.

INSTRUCCIONES—EXCEPCIÓN A LAS INSTRUCCIONES—FUNDAMENTOS DE LA EXCEPCIÓN.—Cuando se toma excepción a las instrucciones que el juez da al jurado es necesario especificar a qué parte de las instrucciones se refiere la excepción y expresar los fundamentos de ésta, pues no se cumple con la ley cuando se toma una excepción general a todas las instrucciones, sin fundamentarla.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. A. A. Vázquez.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Los últimos hechos que rodean este crimen no han sido sometidos a esta corte ni por el apelante ni siquiera por el fiscal. Este resumió ciertamente la prueba aportada por cada testigo, pero no nos suministró una exposición de lo

que la prueba tendía a demostrar. Por ejemplo, de una lectura de los autos no formamos ninguna idea clara de la causa o motivo de este crimen, aunque de la prueba el asesinato probablemente tuvo lugar debido al deseo del acusado en tomar parte en el tesoro en busca del cual hacían aparentemente excavaciones el interfecto y otros. Este apelante no ha radicado ninguna verdadera exposición del caso ni presentado una asignación de errores y por consiguiente, consideraremos únicamente las cuestiones fundamentales.

Angel Rodríguez fué llamado como testigo. El había sido anteriormente declarado culpable por un delito de asesinato en segundo grado por dar muerte al interfecto. El declaró tendente a demostrar que Francisco Vélez disparó el tiro fatal estando Vélez necesariamente presente en el momento si es que había de darse crédito al testigo en algún sentido. La prueba de todos los demás testigos, sin embargo, tiende a acreditar que el mismo Rodríguez disparó el tiro fatal y por tanto su declaración merecía muy poco crédito.

El interfecto y otros estaban haciendo excavaciones por el supuesto tesoro cuando varias personas se presentaron. Uno de los recién llegados preguntó qué hacían los hombres en el hoyo y al dársele una contestación desafiante, o algo por el estilo, alguien dijo: "Tírale seguido para que no sea tan guapo" u otras palabras en este sentido. Un testigo declaró positivamente que el acusado dijo "Tírale." De todos modos, de la prueba el jurado tenía derecho a creer que Francisco Vélez o estaba presente ayudando en el acto del disparo al interfecto o por lo menos que él ayudaba en tal acto de disparar aún cuando él no estaba realmente presente. La prueba tiende más bien a acreditar que Francisco Vélez estaba realmente presente entonces ayudando.

El apelante se queja de que no fué notificado por la acusación de que, a él se acusaba de haber ayudado en el acto del disparo pero que la acusación única y exclusivamente le imputaba el acto de disparar. La cuestión es, pues, si cuando un hombre tiene un juicio por separado y la acusación contra varias personas imputa sólo el acto de disparar, el acusado puede quejarse de una falta de notificación con respecto a que a él se le acusaba del homicidio.

Independientemente de todos los estatutos que consideran a un cómplice antes del hecho como un principal, la ley era que cualquier persona que estaba presente ayudando era un principal. En el caso de Mackelley, 9th Coke 67 B. 77 Reprint 832, se usaron las siguientes palabras:

"De modo que si a A. B. & C. se les acusa de haber dado muerte a J. S. y que A. lo agolpeaba y los otros estaban presentes, ayudando, y de la prueba aparece que B. dió el golpe y que A. y C. estaban presentes, etc., en este caso la acusación no se ajusta a las circunstancias; y sin embargo es suficiente para sostener la acusación, pues la prueba está de acuerdo con el efecto de la acusación y por tanto la variante de las circunstancias de la acusación no es esencial; pues considerará la ley que la herida ha sido causada por cada uno de ellos y que es tan vigorosamente el acto de todos los otros como si los tres juntos hubieran cogido el arma, etc., y todos a un tiempo hubieran agolpeado al interfecto."

En el caso de Sir John Heyden, 11 Coke, 5 B, 7 Reprint 1151, se dijo que el acto de uno es el acto de todos los del mismo grupo que estaban presentes y en *Commonwealth* v. *Chapman,* 11 Pick, 428, se dijo: "La prueba de que una persona estaba presente ayudando sostendría una acusación en que se le imputa como único principal o autor el hecho de haber dado el golpe con sus mismas manos." Otro razonamiento en el mismo sentido puede verse en algunos de los casos que luego citaremos con otro fin.

Aun cuando el acusado hubiera meramente ayudado en el acto de la muerte, sin estar realmente presente, una acu-

sación que imputa el acto de dar muerte es suficiente para declarar culpable a cualquiera que anteriormente hubiera sido conocido, como cuestión general, como un cómplice antes del hecho. La cuestión alegada como error está comprendida en el artículo 36 del Código Penal, el cual es como sigue:

"Artículo 36. Todas las personas complicadas en la comisión de un crimen, ya fuera 'felony' o 'misdemeanor,' y que directamente cometieren el acto constitutivo del delito, o no hallándose presentes, hubieran aconsejado su comisión o incitado a ella; y todas las personas que aconsejaren o incitaren a menores de catorce años, lunáticos o idiotas, a cometer algún crimen; o que, por medio de fraude, artificio, o violencia, ocasionaren la embriaguez de otra persona con el fin de hacerle cometer un crimen, son principales o autores en el crimen cometido."

Y más particularmente en el artículo 93 del Código de Enjuiciamiento Criminal, el cual prescribe lo siguiente:

"Artículo 93. En la acusación contra personas que han tenido participación en la perpetración de un delito grave (felony), ya hayan cometido directamente el hecho constitutivo del delito o hayan ayudado a llevar a término la comisión del mismo, aunque ninguna persona sea perseguida, juzgada y castigada como autor, no necesita exponerse hecho alguno fuera de los necesarios en la acusación contra el autor."

El propio apelante admite, como sucedió, que otra persona fué juzgada y declarada culpable por el disparo. El caso del *Pueblo* v. *Paz,* 12 D. P. R. 99, en vez de favorecer al apelante está en su contra. Allí resolvimos que el artículo 36 era aplicable en cuanto a cómplices antes del hecho, pero que en lo que respecta a cómplices después del hecho la acusación debe contener alegaciones categóricas.

Probablemente el caso principal sobre la cuestión, es el de *People* v. *Bliven,* reportado en 112 N. Y. 79; 8 A. S. R. 710. La corte por conducto del juez, Sr. Peckham, sostiene que en estatutos como el nuestro el caso de un cóm-

plice antes del hecho había sido considerado como el caso
de un principal y que él ocupa por tanto la misma situa-
ción en el caso de *felony*, como tal individuo hasta ahora
ocupaba en casos de traición y *misdemeanor*; que en casos
de traición siempre fué la ley que no había cómplices bien
antes o con una o dos excepciones, después del hecho; que
en cuanto a *misdemeanors* la misma regla existía y que
una persona cometía un acto menos grave (*misdemeanor*)
en relación con un acto en delito de *felony* que lo converti-
ría en cómplice antes del hecho, se le consideraba como
principal y en la acusación se le acusaba como tal y a me-
nos que el denunciante lo prefiriera no mencionaba el hecho
de haber sido cometido el acto por otra persona. La corte
indicó que la razón para la distinción entre casos de *felony*
y *misdemeanor* no había sido clara; que la pequeñez del
caso de *misdemeanor* no podía ser la verdadera razón por-
que había graves casos de *misdemeanor* y algunos de éstos
que eran *misdemeanors* en la ley común habían quedado
convertidos en *felonies* en este país. La corte citó un caso
inglés. En él al acusado se le imputaba el hecho de poner
en circulación chelines falsificados y fué declarado culpa-
ble aunque él se encontraba ausente cuando la moneda fué
realmente puesta en circulación. El caso citado fué exa-
minado cuidadosamente por los jueces ingleses que en él
tomaron parte. El juez asociado Sr. Peckham, citó otros
casos. Entonces revisó las decisiones de este país para de-
mostrar que de acuerdo con estatutos semejantes al nues-
tro no es necesaria mayor especificación y entre otros ca-
sos citó el de *People* v. *Outeveras*, 48 Cal. 19.

El juez asociado Sr. Hunt, después Gobernador de
Puerto Rico, revisó las autoridades en el caso de *State* v.
*Geddes*, 55 Pac. 919. Se expresó en estos términos:

"Geddes está acusado como principal. La acusación no con-
tiene ninguna alegación de que él aconsejara, e incitara o ayudara
a Dixon a cometer el delito. El hecho admitido es que Brown

fué asesinado por Dixon y que Geddes, de estar relacionado con el homicidio en alguna forma, era lo que la ley una vez consideraba como un cómplice. El apelante levanta la cuestión de si una acusación que acusa a una persona simplemente como principal está sostenida por la prueba que demuestra que el acusado, de ser culpable de algo, aconsejó e incitó la comisión del delito. Sostenemos que tal acusación es suficiente. La ley común era de otro modo en tanto pertenecía a delitos graves (felonies) excepto alta traición, aunque en casos de misdemeanors todas las personas culpables eran principales y podían ser acusadas y enjuiciadas como tales. 1 Bish. New Cr. Law, Sec. 685 et seq. También dice Bishop (Sec. 674) que esta diferenciación del cómplice antes del hecho del principal es puramente un tecnicismo. 'Pues en razón natural' dice él 'el que da lugar a que se cometa un delito no se le acusa de modo distinto del que lo perpetra, y una regla familiar de la ley común es que lo que una persona hace por medio de la agencia de otro se considera hecho por ella misma. La ley común de delitos ni siquiera establece ninguna distinción en el castigo entre el principal y el cómplice; siendo un felony el delito de cada uno, del cual la pena originalmente era la muerte. Asimismo, en cuestiones de moral, hay circunstancias en las cuales creemos que es más culpable el cómplice antes del hecho que su autor; como cuando el marido ordena a su mujer, o un principal a su empleado que realicen para beneficio suyo un acto criminal el cual en su ausencia se ejecuta sin ningún deseo debido al temor o efecto que ejerce una influencia sobre la mente de una persona. Sólo podemos hacer una suposición de cómo fué que esta distinción vino a la ley; probablemente de las mismas suposiciones confusas de donde surgió la distinción que ahora no existen entre principales y cómplices en el hecho. Habiendo, sin embargo, quedado establecido como regla técnica no puede ser quitado por las cortes.' El artículo 1852 del Código Penal deroga expresamente las distinciones de la ley común a que se ha hecho referencia y prescribe que 'todas las personas relacionadas con la comisión de un felony, ya cometan ellos directamente el acto constitutivo del delito, o ayuden a su comisión, aunque no estén presentes, deben ser procesadas, juzgadas y castigadas como principales, y no es necesario alegar ningunos otros hechos en ninguna acusación o información contra tal cómplice, que no sean los que se exigen en una acusación o información contra su principal.' Claramente este lenguaje explícito es determinativo

de este aspecto del caso y muestra que el objeto del Código era considerar desde el mismo punto legal al principal y al agente, y permitir que el principal fuera acusado como si el mismo hubiera cometido el *felony* que en realidad fué perpetrado por su agente por su consejo e incitación. *People* v. *Bliven,* 112 N. Y. 79, 19 N. E. 638; State v. Kent (N. D.) 62 N. W. 631. Los derechos constitucionales que por la sección 16, artículo 3, de la Constitución garantizan al acusado a exigir que se le informe de la naturaleza y causa de la acusación, no se infringe por el estatuto que permite formular una acusación en contra de uno como principal que en realidad es un agente, debido a que la vieja distinción entre principal y cómplice antes del hecho era meramente arbitraria y 'sin existencia en la razón natural o en las doctrinas corrientes de la ley.' Bish. New Cr. Law, Sec. 673. '*Qui facit per alium facit per se*' es el principio que predomina en la ley tanto criminal como civil y que sirve de base al estatuto que deroga las distinciones que son 'más· imaginarias que reales.' *People* v. *Bliven, supra.* De modo que al derogar estas distinciones el estatuto no ha hecho otra cosa que dejar a un lado 'el puro tecnicismo', con el fin de simplificar la práctica para armonizarla con el pensamiento elevado de los códigos, y creemos que un cargo en contra de uno que anteriormente fué conocido como 'un cómplice antes del hecho' es válido contra él como principal. *State* v. *Kent, supra.* La posterior decisión de la Corte Suprema de Washington en el caso de State v. Gifford, 53 Pac. 709, revocando una anterior decisión de esa corte en State v. Duncan, 7 Washington, 336, 35 Pac. 117, está en contra de la reciente corriente de autoridades. Y el razonamiento de la misma creemos que envuelve un '*non sequitur*' en esto: Siendo cierto que aquél que perpetra un crimen bajo la agencia de otro lo realiza él mismo, la prueba de que él aconsejó y solicitó a otra persona para realizarlo es prueba que él mismo lo ha realizado. Por tanto, el cargo en contra de él como principal no excluye la inferencia de que él lo ha realizado por conducto de un tercero, aún cuando de la faz del *pleading,* considerando al acusado como autor principal, una condición imposible puede resultar como, por ejemplo, en el cargo de violación por una mujer. El argumento contrario conduce a esto: Si una persona no podía ser un principal en el delito de violación ella no podía ser un principal si aconsejó e incitó la violación. Pero la ley declara que ella será tenida por principal y ¿por qué la ley no considera a una mujer que ayuda una violación como cul-

pable de violación lo mismo que al autor o principal? ¿La legislatura tenía facultad para anular ciertas distinciones criminales y establecer otras; y aunque desde ciertos aspectos puede resultar un absurdo, de otros un cargo perfectamente claro y específico se hace al cual el acusado debe contestar. State v. Rove, 104 Iowa, 324, 73 N. W. 833; State v. Comstock, 46 Iowa, 265; U. S. v. Snyder, 14 Fed. 554; People v. Chapman, 62 Mich. 280, 28 N. W. 896; Boggus v. State, 34 Ga. 275; State v. Jones, 83 N. C. 605.'' 55 Pac. Rep. 925.

También, el juez asociado Sr. Hunt, en el caso de *Rosenkronz* v. *United States,* 150 Fed. 42, se expresó en estos términos: '' La alegación siguiente del demandante en error es que la corte debió haber ordenado que se rindiera un veredicto de culpabilidad debido a la incongruencia fatal existente entre la acusación y la prueba, en que el cargo que se hace es que el demandante en error ilegalmente mantenía y establecía una casa de mala reputación para fines de prostitución mientras que la prueba meramente tendió a establecer que el demandante en error poseía la casa y recibía una renta por la misma de una mujer que empleaba el sitio para fines de prostitución.'' La corte, después de citar algunos casos que aparentemente sostenían la contención del apelante demostró que estos casos habían sido revocados por el de *People* v. *Outeveras, supra,* y por el de *People* v. *Rozelle,* 78 Cal. 84, citados por el fiscal de esta corte. Al parafrasear al juez asociado Sr. Hunt, en el caso de *State* v. *Steeves,* 43 Pac. 947, la Corte Suprema de Oregon consideró la cuestión que ahora está sometida a nuestra consideración. Allí el acusado fué hecho parte en la acusación con un tal Kelley por el delito de asesinato en primer grado. Los acusados tuvieron juicio por separado. El acusado Steeves no estaba presente en la muerte pero la prueba demostró que él aconsejó y solicitó a su co-acusado para dar muerte al interfecto. Se insistió por el acusado en que toda vez que a él se le acusaba de un acto especí-

fico y no como cómplice, su derecho constitucional a ser in-
formado de la naturaleza y causa de la acusación contra él
fué usurpado y que no podía él decir mediante la inspección
del cargo que se haría una tentativa para probar que él era
un cómplice antes del hecho, pero la corte resolvió que la
alegación carecía de mérito por razones semejantes a las
que hemos citado. El juez Sr. Hunt cita otros casos.

En el caso de *People* v. *Katz,* 209 N. Y. 311, Ann. Cases
1915, A, 501, 505, encontramos lo siguiente: ''El ilustrado
abogado del acusado sostiene que la acusación que alega que
el acusado es un principal no está sostenida por la prueba de
que él ayudó a otras personas a quienes se les acusaba jun-
tamente con él. La acusación contenía tres cargos, pero
el único que necesitamos considerar es el primero, el cual
imputa el hurto en la forma simple de la ley común. Este
cargo imputa al acusado el acto de sustraer criminalmente,
tomar y llevar la propiedad descrita y el razonamiento es
que tal cargo no es suficiente para permitir prueba de que
el acusado ayudó a otras personas en la perpetración de
una conspiración para cometer un hurto. En oposición a
este argumento citamos el claro lenguaje del estatuto 'que
una persona relacionada con la comisión de un delito ya
cometa directamente el acto constitutivo del delito o ayude a
su comisión y ya esté presente o ausente, y una persona que
directa o indirectamente aconseje, ordene o haga que otra
persona cometa el delito es un principal,' '' donde se cita
el caso de *People* v. *Blevin, supra,* y otros casos. Los ca-
sos de *People* v. *Nolan,* 144 Cal. 76; 77 Pac. 774; *State* v.
*Duncan* (Wash.) 35 pac. 117; *Territory* v. *Guthrie,* 17 Pac.
39, son también aplicables.

Otros alegados errores fueron consignados respecto a las
instrucciones y apreciación de la prueba, pero ellos giran
principalmente sobre la misma alegada incongruencia, o sea
que la acusación imputaba el hecho de disparar y la prueba
demostraba más bien la ayuda o incitación del delito.

En estas instrucciones la corte dijo, algo erróneamente, que la premeditación podría ser "expresa" o "tácita", demostrando luego que la corte estaba pensando en la malicia. El error no era perjudicial y no se tomó ninguna excepción específica. Aunque revisamos las instrucciones en busca de errores fundamentales, sin embargo debieron tomarse excepciones específicas. Ley de mayo 30 de 1904, Leyes de 1905, pág. 16; *El Pueblo* v. *Ramírez*, 25 D. P. R. 263, y siguientes. Con decir meramente "Tomo excepción a las instrucciones" no se cumple con la ley.

También convenimos con el fiscal de esta corte en que las instrucciones debían considerarse en conjunto y no encontramos en ellas ningún error perjudicial.

La sentencia debe ser confirmada.

> *Confirmada la resolución denegando nuevo juicio y la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.