El Pueblo de Puerto Rico, demandante y apelado, *v.* Ramón Maldonado García, acusado y apelante.

No. 4902.—*Sometido:* Marzo 7, 1933. *Resuelto:* Julio 19, 1933.

418

*Arturo Aponte,* abogado del apelante; *R. A. Gómez. Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En la tarde del 29 de abril de 1931, Lucas Rivera llevó unas reses al depósito municipal de Las Piedras y las entregó a la persona encargada del mismo. Fué entonces donde el jefe de la policía de aquel pueblo para informarle de lo que había hecho, para expresarle el temor que tenía de ser acometido y agredido por los hermanos Maldonado por haber llevado las reses al depósito y que ellos habían dicho que le agredirían. El jefe de la policía fué a ver al acusado en este caso y le comunicó lo que Lucas Rivera le había dicho, y el acusado contestó que en lo que a él concernía nada habría que temer. El jefe de la policía entonces le preguntó que qué le decía de su hermano Francisco Maldonado, a quien pertenecían las reses, y el acusado le contestó que su hermano

se hallaba en San Juan. Entre claro y obscuro, ó sea como
á las siete de la noche, Lucas Rivera salió de Las Piedras
hacia un sitio en que vivía en el campo. Se desmontó del
automóvil frente a la casa de Maximina Rivera, parienta
cercana suya. En aquel momento el acusado se hallaba en
una tienda cercana a la casa de Maximina Rivera. Lucas
Rivera pasó por el patio de la casa de Maximina Rivera y
finalmente entró en la casa. El acusado entonces se situó en
la esquina de dicha casa, mirando por la puerta en que es-
taba Lucas Rivera, y ocasionalmente en otra dirección.
Cuando éste salió de la casa, el acusado comenzó a hacerle
disparos.

De la prueba aducida en el caso el jurado tenía derecho
a creer estos hechos.

La corte en sus instrucciones, luego de exponer los hechos
que preceden, dijo que después de dar dos o tres pasos, Lucas
Rivera cayó al suelo herido. La corte continuó diciendo:
"Entonces el acusado Ramón Maldonado huyó, según la ma-
nifestación de uno de los testigos de El Pueblo." Se pre-
sentó prueba que no fué controvertida tendente a demostrar
que las personas que acudieron en ayuda de Lucas Rivera
tuvieron dificultades en conseguir un médico y que transpor-
taron al herido de un sitio a otro hasta que llegaron al hos-
pital de Humacao donde Lucas falleció. También la corte
llamó la atención hacia el hecho de que Lucas Rivera por-
taba una soga con la cual hacía movimientos tratando de
defenderse de los disparos. Durante el juicio, el acusado no
trató de negar que había hecho los disparos, pero se basó
en la teoría de defensa propia y trató de demostrar que Lucas
estaba armado. El jurado declaró al acusado culpable del
delito de asesinato en segundo grado, y se dictó la correspon-
diente sentencia.

 ■■ Ante este tribunal el apelante no ha presentado
una debida relación del caso, tal cual la hemos hecho más
arriba. La mayoría de los señalamientos de error, si no
todos, son insuficientes, y en la corte inferior no se tomaron

las debidas excepciones a la instrucciones a que los señalamientos de error se refieren principalmente. Toda esta situación está bastante bien cubierta por la opinión de esta corte en el caso de *El Pueblo* v. *Serrano*, 35 D.P.R. 336. Dijimos en dicho caso:

"En una moción solicitando una prórroga del término, el fiscal de esta corte llamó la atención a la forma defectuosa e irregular en que fué presentado el alegato del apelante. En realidad la moción debió haber sido para desestimar la apelación, dándose, por supuesto al apelante la oportunidad de enmendar, pues era un caso criminal. No existe señalamiento de errores. No hay enumeración de errores; ni siquiera la separación entre los mismos. No sólo existen estas deficiencias como ha indicado el fiscal, sino que no hay 'una exposición verdadera y concisa del caso' como lo exige la Regla 42. El apelante, como en muchos otros casos criminales, se conforma con hacer un resumen de la prueba, testigo por testigo. La naturaleza general del caso, la índole del cargo, la tendencia general de la prueba del gobierno y de la defensa, éstas son todas cosas que deben ponerse en la primera parte del alegato y ser incluídas en un párrafo o párrafos separados—con el debido encabezamiento. El señalamiento de errores debe seguir después. Quizás el abogado confiaba en la práctica constante de esta corte de examinar los autos cuidadosamente en un caso criminal.

"Hemos examinado, como asume al parecer el abogado, los autos cuidadosamente. Hubo prueba tendente a acreditar que el apelante por celos o por enojo y con malicia premeditada, dió muerte a José García con un revólver. Hubo cierta prueba de defensa propia, pero el jurado en manera alguna estaba obligado a darle crédito. No hay la más mínima indicación de pasión, prejuicio o parcialidad por parte del jurado. El disparo tuvo lugar en un baile. La prueba tendió a mostrar que el acusado, discutiendo sobre el derecho a bailar con una muchacha y habiendo estado tomando, fué sacado del salón principal por amigos, se les escapó y regresando disparó tres tiros y mató a José García.

"El esfuerzo principal del apelante es para atacar las instrucciones dadas por la corte. El acusado solicitó que se dieran instrucciones. No se formuló objeción alguna a la instrucción del juez; ni siquiera una general. El abogado del acusado no debe sentarse en la esperanza de que la corte incurrirá en error, sino que por lo general deben hacerse las objeciones y tomarse las excepciones al

terminar las instrucciones, a semejanza de la admisión y exclusión de prueba.

"En el caso de El Pueblo v. Lebrón, 23 D. P. R. 658, citamos la ley que regula las apelaciones, a saber:

" 'Siempre que resultara de los autos, en alguna causa criminal apelada a la Corte Suprema, que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia a menos que el error que de los autos resultare, tendiere a perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador; *Disponiéndose, sin embargo,* que el tribunal de apelación podrá conocer de errores fundamentales que aparecieren en los autos, aun cuando no se hubiere interpuesto objeción a ellos, y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere'.

"Y dijimos:

" 'De acuerdo con dicha ley la corte ha revocado voluntariamente algunos casos en los cuales no han sido tomados en consideración los derechos fundamentales del acusado, y siempre ha sostenido su derecho a proceder de este modo. El Pueblo v. Morales, 11 D. P. R. 306; El Pueblo v. Fernández, 14 D. P. R. 629; El Pueblo v. Pellot, 15 D. P. R. 454; El Pueblo v. Crespo, 21 D. P. R. 300, pero generalmente a falta de excepciones nos hemos negado a revocar, a menos que se hubiera probado claramente el perjuicio. El Pueblo v. Rosado, 17 D. P. R. 441; El Pueblo v. Ortiz, 19 D. P. R. 305; El Pueblo v. Díaz, 19 D. P. R. 520; y otros casos que en los mismos se citan.'

"Pueblo v. Barrios, 23 D. P. R. 831, fué un caso en el que citando el de Pueblo v. Lebrón, encontramos un error fundamental. La corte inferior estuvo completamente equivocada en su teoría sobre defensa propia. Observamos el principio sentado en el caso de Pueblo v. Lebrón y rehusamos revocar en Pueblo v. Trujillo, 24 D. P. R. 129; Pueblo v. Hernández, 25 D. P. R. 660; Pueblo v. Ramírez, 25 D. P. R. 263; Pueblo v. Pujals, 34 D. P. R. 402.

"Nos está reservado, pues, el derecho a revocar por errores fundamentales, pero esto no se refiere a las declaraciones erróneas de la corte al hacer el resumen de la prueba, que fácilmente son susceptibles de corrección, ni tampoco a ligeras discrepancias en la exposición de la ley; ni siquiera a las tendencias erróneas de observaciones independientes, especialmente cuando en todas las instrucciones han de encontrarse las debidas instrucciones, como en el caso ante nos. En relación con esto último véase el caso de Pueblo v. Vélez, 32 D. P. R. 382–91.

"Por ejemplo, al hablar del derecho de defensa propia la corte equivocadamente dijo que el acusado no podía actuar por virtud de un peligro aparente. Inmediatamente después, sin embargo, y al concluir la corte dijo en efecto al jurado que debe haber algún acto que induzca a un hombre de ordinaria prudencia al temor de que su vida está en peligro o que podría sufrir un grave daño; y en la página 50 de los autos aparece una manifestación correcta. En otras partes de las instrucciones la corte narró la prueba que favorece a la defensa y substancialmente dió la instrucción de que si el jurado la creía debía absolver. El error fué originado probablemente debido al sumario equivocado del caso de Pueblo v. Sutton, 17 D. P. R. 345. La opinión misma no contiene la manifestación errónea.

"No encontramos que el castigo de treinta años sea excesivo bajo las circunstancias de este caso."

■■■ Se ha llamado nuestra atención hacia el artículo 300 del Código de Enjuiciamiento Criminal, que lee así:

"Cuando instrucciones escritas para el jurado hayan sido presentadas, dadas o rechazadas, o las instrucciones hayan sido tomadas por taquígrafos, no habrá necesidad de oponer excepciones a los puntos aducidos en dichas instrucciones, ni de incluirlas en el escrito o declaración de excepciones; pero las instrucciones escritas o la nota del taquígrafo con los endosos en que se consigna la resolución del tribunal, formaran parte del acta, y cualquier error en la decisión del tribunal podrá utilizarse en una apelación, de igual modo que si se hubiere consignado en el escrito o declaración de excepciones."

Tenemos la idea de que la palabra "instrucciones" (*charges*), tal como se usa en ese artículo, se refiere más particularmente a solicitudes hechas por el acusado para que se den instrucciones, ya escritas u orales, y no a las instrucciones generales de la corte. Sea ello como fuere, la ley de 1904, citada en *El Pueblo* v. *Lebrón* y posteriormente en *El Pueblo* v. *Serrano,* supra, respecto a la toma de excepciones generalmente, es de una fecha posterior al Código de Enjuiciamiento Criminal y en efecto es un estatuto reparador que requiere a un acusado en general a tomar excepciones a las instrucciones. Según se indica en los casos de Lebrón y

Serrano, el referido estatuto no impide que este tribunal advierta errores fundamentales, pero la regla es que el acusado debe dar a la corte la oportunidad de corregir sus equivocaciones. La idea de una excepción necesariamente lleva implícita una oportunidad anterior de parte de la corte para rectificar. Cuando el artículo 300 dice que el error podrá utilizarse en apelación cual si se hubiere consignado en el escrito de excepciones, envuelve la idea de una objeción hecha y de una oportunidad de parte de la corte para enmendar.

Algunas de las circunstancias expuestas en la opinión en el caso de Serrano, supra, quizá no existan en el presente, pero lo que definitivamente existe es la omisión de presentar una relación del caso y de excepcionar debidamente las instrucciones de la corte. Igualmente los señalamientos de error son insuficientes. Trataremos primeramente esta última cuestión.

Se ha dicho en muchas ocasiones que el señalamiento de errores es como la demanda en la corte inferior y debe contener lo suficiente para que esta corte esté informada de la naturaleza del error. No basta que el apelante diga que la corte cometió error al permitir que se hicieran ciertas preguntas a un testigo ni aun que la corte erró al no permitir que un testigo fuese repreguntado sobre hechos que él necesariamente conocía. Más particularmente, no basta que el apelante diga que la corte invadió las atribuciones del jurado o que dió instrucciones erróneas, ni decir que la corte cometió error al instruir al jurado sobre una huída imaginaria del acusado. Algunos señalamientos no eran tan totalmente deficientes como los que hemos enumerado, pero con la posible excepción de aquellos a que haremos referencia, el hincapié hecho por el apelante es sobre los errores que hemos tratado de indicar.

La siguiente jurisprudencia demuestra que es necesario que los señalamientos de error sean más específicos: *People* v. *Penbroke,* 6 Cal. App. 588; *People* v. *Fossetti,* 7 Cal. App. 629. En el primer caso, que es algo más fuerte que el pre-

sente, se solicitaron instrucciones y la corte se negó a transmitirlas, y se resolvió que un señalamiento de errores general en relación con las instrucciones no era suficiente. En el último caso citado, el tribunal dijo: "La corte es merecedora de que cuando el letrado se funda en que se cometió error al negarse a dar una instrucción, se haga constar la instrucción y se indiquen las razones por las cuales se cree que la corte inferior cometió error al negarse a darlas; y la misma regla es aplicable cuando se transmite una instrucción que ha sido objetada," citando otros casos de California.

■■ Durante la vista nos impresionó principalmente el hecho, presentado por el apelante, de que la corte dijo al instruir al jurado que el acusado se fugó, según la declaración de un testigo. Éste meramente dijo que el acusado entonces se fué del lugar del suceso. La corte hizo otros comentarios. El señalamiento de error debió habernos indicado considerablemente más de que la corte erró al instruir al jurado sobre una fuga imaginaria.

Yendo ahora a las instrucciones, el procesado, una vez que la corte las pronunció, y antes de haberse retirado el jurado, no hizo tentativa alguna para señalar errores en ellas ni para excepcionarlas. No se le dió a la corte la oportunidad de rectificar. No sólo es el caso de Serrano, *supra,* aplicable, sino que hemos consignado el mismo principio de derecho en varios casos posteriores. *Pueblo* v. *Hernández,* et al., 25 D.P.R. 660; *Pueblo* v. *Varela,* 42 D.P.R. 823; *Pueblo* v. *Macaya,* 43 D.P.R. 621. En lo que respecta a la instrucción sobre la huída, puede notarse que la corte fácilmente pudo haber corregido su aserción, diciendo al jurado lo que efectivamente sucedió. Era deber del acusado dar a la corte esta oportunidad.

Verdad es que el acusado después que el jurado se había retirado a deliberar presentó algunas objeciones y excepciones a las instrucciones, pero la mayor parte de aquéllas, excepto la cuestión de la fuga, no son objeto de esta apelación.

Toda vez que se hizo tanto hincapié en la cuestión de la fuga, la consideraremos más.

No sólo se refirió este testigo a haberse ido el acusado del sitio del suceso, sino que el acusado mismo ocupó la silla testifical. Manifestó:

"No, señor; yo seguí. Yo le tenía miedo y al yo seguir, él me hizo un disparo y entonces yo cambié y nos disparamos; pero únicamente mi revólver tenía tres balas, yo se las disparé y me fuí andando a paso ligero como con miedo que llevaba y cuando había andado como 100 metros iba lleno de miedo, llevaba como canillera. Me paré creyendo que yo estaba herido y entonces cuando me paré Nicolás García que iba detrás de mí, me dice: 'Ramón, Ramón, oye, párate ahí, dame acá ese revólver'."

Toda ésta era prueba de la cual la corte o el jurado pudieron haber inferido la idea de que el acusado, en adición a haberse ido del lugar de los disparos, en realidad se había fugado.

Sin embargo, una fuga no siempre es algo que se hace con rapidez. Una persona puede irse lentamente de la escena del suceso y aun poderse decir que se fugó. En forma alguna hallamos que el acusado fué perjudicado por las instrucciones.

Hemos examinado los autos con respecto a los otros señalamientos de error, y nada fundamental hallamos. No los discutiremos, con excepción a los referentes a que la corte dió una instrucción errónea en torno a asesinato en segundo grado y a la moción de nuevo juicio.

La corte dijo en sus instrucciones que la premeditación era un elemento innecesario para una condena de asesinato en segundo grado. Esto constituyó un error, y así lo resolvimos en el caso de *El Pueblo* v. *Roldán,* 27 D.P.R. 789.

El presente es un caso en que el acusado fué a un sitio al cual le constaba que iría el interfecto, permaneció en espera de él y le disparó y mató. La acusación era por asesinato en primer grado y los hechos aducidos en el juicio hubieran dado derecho al jurado a rendir un veredicto por el delito

imputado si no creía la teoría de defensa propia suscitada por el apelante. Sin embargo, el veredicto fué por asesinato en segundo grado. Además, la corte no estaba obligada, a tenor de la decisión en el caso de *Sparf* v. *United States,* 156 U. S. 51, a dar instrucciones relativas a homicidio voluntario.

El apelante sostiene que cuando la corte dió la instrucción impugnada, el jurado pudo haber creído que estaba rindiendo un veredicto por homicidio voluntario solamente en vez de asesinato en segundo grado. No hubo prueba alguna tendente a demostrar un caso de homicidio voluntario, y repetimos que no era necesario transmitir instrucciones de homicidio voluntario. Por consiguiente, el acusado no sufrió perjuicio alguno.

El error de la corte pudo haber sido rectificado si el abogado hubiera llamado la atención hacia el caso de Roldán, el cual le era presuntivamente bien conocido.

En cuanto a la moción de nuevo juicio, nada contenía que no pudiera ser objeto de la apelación de la sentencia misma, y como en ésta no encontramos error, por lo menos error perjudicial, no la consideraremos más.

Observamos que las instrucciones sobre defensa propia fueron suficientes. La corte no erró al decir que deben establecerse todas las condiciones de la defensa propia para que un acusado pueda aprovecharse de ella. Puede ser que la corte no debiera hacer demasiado énfasis en el hecho de que todos los elementos deben concurrir, pero una vez más no vemos error perjudicial alguno, especialmente a falta de excepción. Esto abarca varios de los señalamientos de error.

*No encontrando error fundamental alguno, la sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Hutchison está conforme con el resultado.