El Pueblo de Puerto Rico, demandante y apelado, *v*. Juan Estrella, acusado y apelante.

No. 4603.—*Sometido:* Junio 6, 1933. *Resuelto:* Julio 19, 1933.

---

* Nota: Véase el prefacio.

*Arturo Aponte,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Juan Estrella, acusado de un delito de homicidio voluntario, fué declarado culpable por un jurado y condenado a siete años de presidio por la Corte de Distrito de Humacao. Según la acusación, el referido Juan Estrella voluntariamente y en ocasión de una súbita pendencia, dió muerte ilegal al ser humano Matilde López, infiriéndole una herida en el cuello con un instrumento cortante que le produjo la muerte.

No conforme el acusado con la sentencia dictada interpuso el presente recurso de apelación atribuyendo a la corte inferior varios errores cometidos, según se alega, al trasmitir sus instrucciones al jurado. Se señala como primer error la instrucción de la corte sobre la supuesta fuga de Juan Estrella. Se alega que no hubo prueba alguna de fuga y que la corte, no obstante, sometió al jurado la siguiente instrucción:

"Se declaró por un testigo que el acusado huyó cuando cayó al suelo herido Matilde López. La corte instruye a los señores del jurado que esto por sí solo no demuestra la existencia de un hecho, pero debe o puede ser tenido en consideración por el jurado, a los efectos de juzgar toda la situación ocurrida en el momento de los hechos, ya que es difícil pensar que una persona que no tiene culpa alguna huya, mientras que es más probable, más creíble y más razonable que huya una persona que tiene culpa, salvo que hayan otras circunstancias o algo que pueda influir en esa persona que la obligue independientemente de su culpa a huir; situación que debe ser considerada y resuelta por el jurado en relación con dicha declaración."

██ ██ Tiene razón la defensa en cuanto a la prueba se refiere. Ningún testigo declaró que el acusado huyera. Hemos examinado cuidadosamente las declaraciones de los testigos y únicamente hemos encontrado la evidencia que pasamos a mencionar, que a nuestro juicio no puede considerarse como una huída ni justifica la instrucción sometida por la corte inferior al jurado. Se le preguntó a Santos López, hermano del interfecto, qué le pasó a Matilde y contestó:

"Que se fué así de lado y ahí yo grité: 'Ay, que mataron a mi hermano.' (P.) ¿Qué hizo Juan Estrella? Se fué como para la casa, porque fué así en el batey."

Conviene tener en cuenta que la muerte ocurrió en el batey de una casa donde se estaba bailando.

El testigo Tiburcio López, hermano también del interfecto, dice que le metió dos palos a Juan Estrella en la cabeza, y entonces se fué, sin decir para dónde. Luego, a preguntas de la defensa, declara que no sabe si el acusado recibió alguna herida en el cuello, que él se fué de allí y no lo vió.

Esta es la única prueba que ha podido inducir a la corte inferior a decir erróneamente que hubo un testigo que declaró que el acusado huyó. Sin embargo, aunque tenemos forzosamente que convenir en que no ha debido someterse al jurado la instrucción mencionada, la verdad es que en este caso, dada la naturaleza de la prueba, no vemos que se hayan

perjudicado sustancialmente los derechos del acusado. Se acusa a Juan Estrella de haber dado muerte a Matilde López en una súbita pendencia. La prueba del pueblo tiende a demostrar que allá por el último día del año de 1930, siendo aproximadamente las once de la noche, un grupo de personas se dirigía a casa de don Juan López, con el propósito de pasar allí algunas horas cantando y bailando. Parte de las personas que formaban el grupo penetró en el interior de la casa y parte se quedó en el batey. Llegó después Matilde López. El acusado al verlo se dirigió a él y llamándole "bribón" se le tiró encima y le infirió una herida en el cuello que le produjo la muerte. El testimonio del acusado tiende a demostrar que Matilde López apareció dando vivas al Año Nuevo y diciendo: "¿Qué bandolería es esa que ustedes tienen ahí?"; que Flor López, hermano de Matilde, le contestó: "Ya tú vienes con tus pocas vergüenzas," y le dió un palo; que Matilde se volvió para donde estaba Flor y se tropezó con el testigo, y aquí se empuñaron; que al empuñarlo Matilde tenía un arma y le infirió una herida al testigo en el cuello; que éste lo empuño y le cortó nuevamente en una mano; que recibió tres heridas y que Matilde tenía una navaja en la mano; que el testigo era más fuerte que Matilde y lo dominó, y al dominarlo trató de que lo soltara; que como el testigo se lo llevó en fuerza, le pegó las manos de él con las suyas y que cuando recibió la herida lo soltó; que resbalaron y parece ser que ahí se cortó; que el testigo no tenía armas.

Esta es la prueba de la defensa, la declaración del propio interesado. La herida inferida a Matilde López tenía, según declara el facultativo que practicó la autopsia del cadáver, nueve pulgadas de longitud y se extendía casi de un hombro a otro. En su testimonio parece dar a entender el acusado que el interfecto se produjo la herida en la lucha cuando se le pegó el hierro que tenía y "le pegué las manos de él con las mías." Luego, a preguntas de la defensa, dice que en la lucha que tenían resbalaron y parece ser que ahí se cortó.

No creyó el jurado al testigo. No es de suponerse que habría sustentado una opinión diferente si no se hubiese sometido la instrucción basada en que hubo un testigo que dijo que el acusado huyó. La naturaleza de la prueba nos induce a pensar que el jurado hubiese llegado a la misma conclusión en ausencia de la instrucción que le fué sometida erróneamente por la corte. De acuerdo con la ley esta corte no anulará la sentencia del tribunal inferior a menos que el error que de los autos resulte tendiere a perjudicar los derechos de cualquiera de las partes y se hubiere interpuesto la debida excepción en el tribunal sentenciador. Aparte de que no creemos que se haya ocasionado un perjuicio sustancial a Juan Estrella con la instrucción sometida al jurado sobre la supuesta huída, entendemos que la defensa debió haber llamado la atención de la corte inferior acerca de este error para que dicha corte hubiese tenido la oportunidad de corregir y subsanar la equivocación.

■ Es verdad que el acusado excepcionó en términos generales todas las instrucciones; pero no es menos cierto que señaló especialmente determinadas instrucciones y que no mencionó en ningún sentido las palabras de la corte poniendo en labios de un testigo la afirmación de que el acusado huyó. No se le dió, por tanto, oportunidad al tribunal inferior para rectificar el error de acuerdo con la jurisprudencia sentada constantemente por esta corte y que aparece resumida en el caso de *El Pueblo* v. *Ramón Maldonado* que acabamos de decidir (ante pág. 417).

Blashfield, en su obra "Instrucciones al Jurado", tomo primero, página 795, dice que es una regla general que los errores basados en las instrucciones no deben ser considerados en apelación a menos que se le haya llamado la atención a la corte inferior. La razón de esta regla es ofrecer a la corte sentenciadora la oportunidad de corregir los errores en que ha incurrido por inadvertencia, obviando así las dilaciones y gastos de una apelación, y para evitar que una parte especule, dejando que el caso vaya al jurado, a pesar del

error, sabiendo que si el veredicto es adverso puede obtener su revocación en apelación. La forma adecuada de salvar las cuestiones que quieran discutirse en la corte de apelación es llamando la atención de la corte inferior con respecto a los errores en que se supone ha incurrido a fin de que los corrija. Si insiste en la instrucción sometida, la parte debe tomar excepción. Esta regla, según Blashfield, se aplica lo mismo a los casos civiles que a los criminales. En Puerto Rico ya esta Corte Suprema ha sentado la doctrina a seguir, de acuerdo con la ley relativa a la revocación de sentencias en causas criminales, aprobada en mayo 30 de 1904. Se desestima el primer error.

Se alega por la defensa que la corte inferior cometió error al llamar en sus instrucciones "víctima" al interfecto, y se copia en apoyo de esta contención un párrafo de la opinión emitida por la Corte Suprema de California en el caso de *People* v. *Williams,* 17 Cal. 143, que dice así:

"La palabra 'víctima' en la conexión en que aparece es una expresión descuidada, calculada, aunque indudablemente sin intención, para crear prejuicios contra el acusado. Parece asumir que el interfecto fué ilegalmente muerto, cuando la cuestión en controversia era el carácter de la muerte. No estamos dispuestos a criticar con mucha escrupulosidad el lenguaje usado, con el fin de revocar una sentencia de esta clase, pero es aparente que en un caso en que hay conflicto de prueba, aun una expresión equívoca del juez puede ser fatal para el prisionero. Cuando se califica al acusado de víctima se crea naturalmente la impresión de que algún poder o dominio ilegal se ha ejercido sobre su persona. Y es ésta una expresión equivalente a caracterizar al acusado como un criminal. La corte no debe directa o indirectamente asumir la culpabilidad del acusado, ni emplear frases equívocas que puedan producir tal impresión. La experiencia de los abogados demuestra la prontitud con que un jurado frecuentemente se penetra de las intimaciones de la corte y la gran atención que se presta a las opiniones y sugestiones del juez presidente, especialmente en un caso en que la prueba está muy balanceada, cuando los jurados pueden descargar sobre la corte la responsabilidad de una decisión de la controversia. Una palabra, una mirada o un tono, puede algunas veces, en tales casos, ser de una

influencia grande o dominante. Nunca es excesiva la cautela de un juez en un caso criminal para evitar intervenir con las conclusiones del jurado sobre los hechos, porque de estos hechos, bajo nuestro sistema, es el jurado juez exclusivo. Nada más lejos de nuestro ánimo que intentar censurar al ilustrado juez de la corte inferior por estas observaciones; pero la importancia de esta cuestión y la involuntaria expresión apuntada sugieren la oportunidad de las mismas.''

En el caso de California la corte sentenciadora llamó ''his victim'' al interfecto, como si éste fuese la víctima del acusado. En nuestro caso la corte habla de la lucha sostenida por Juan Estrella con ''la víctima'', y repite estas palabras al relatar la prueba de la defensa y hablar de la lucha del acusado con Matilde López. Hay cierta diferencia entre una instrucción y otra. En el caso de California se usa la expresión ''su víctima'', es decir, la víctima del acusado; en nuestro caso se usa únicamente la palabra ''víctima''. Estamos muy lejos de impartir nuestra aprobación al uso de la palabra mencionada. Creemos que la corte inferior la empleó sin intención de crear prejuicios contra Juan Estrella. La palabra ''víctima'', en su sentido general, no implica culpa o intención criminal de parte de la fuerza que interviene para ocasionar la muerte, o grave daño personal, a la persona a quien se da este calificativo. Esta palabra se usa con frecuencia para calificar a las personas que han resultado sacrificadas o sériamente perjudicadas en un suceso ocasionado por la mano del hombre o por cualquier otra fuerza ajena a su intervención. Llamamos ''víctimas'' a los seres humanos sacrificados en un terremoto, en un ciclón, en una inundación, y también solemos decir que una persona es víctima de sí misma o de las circunstancias, y aun aplicamos a veces este calificativo al que sufre una desgracia o se ve sometido a una penosa tribulación espiritual. Como ya dijimos antes, convenimos en que la corte sentenciadora no ha debido usar esta palabra en sus instrucciones, pero no podemos considerar el uso de la misma como un error fundamental

que apareje la revocación de la sentencia. En el caso de *People* v. *Williams,* supra, no se revoca la sentencia porque la corte inferior usara la palabra "víctima". El tribunal de apelación hace constar especialmente que se revoca la sentencia de la corte inferior por el último error analizado en la opinión emitida en dicho caso, que se refiere a la negativa de la corte a someter al jurado una instrucción solicitada por el acusado.

El tercer error atribuído a la corte inferior consiste en haber omitido la declaración del testigo Basilio Delgado en el resumen que hizo al jurado de la prueba de cargo. En sus instrucciones el juez no hace mención específica del testimonio de cada testigo separadamente. Resume la prueba en términos generales. Nada dice, sin embargo, con respecto a la declaración de Basilio Delgado, quien declaró que Matilde López llegó dando vivas al Año Nuevo, que Flor, su hermano, dijo: "Ahí viene Matilde como siempre, con un palo;" que Matilde se le fué encima a Flor, y éste se tapó con Juan Estrella y entonces Matilde se agarró con Juan. Este testigo declaró ante el juez de paz y en su declaración anterior no menciona a Flor López ni habla, por consiguiente, de que se cambiaran palabras ofensivas entre él y su hermano Matilde. Dijo entonces que Matilde López llegó dando vivas al Año Nuevo y allí se formó una discusión entre él y Juan Estrella, que Matilde y Juan se agarraron y el declarante oyó la voz de Santos López que dijo: "Mataron a mi hermano;" que vió a cada uno de los dos heridos y que no vió arma en las manos de Matilde. Entendemos que la defensa, si creyó que la declaración de Basilio Delgado podría beneficiar al acusado, debió solicitar de la corte que instruyera al jurado sobre el testimonio de este testigo. Las instrucciones dadas al jurado no deben ignorar o excluir ninguna de las cuestiones en controversia, teorías o defensas presentadas por las alegaciones y la evidencia. Sin embargo, creemos que si la defensa adopta una actitud pasiva y silenciosa, sin llamar la atención a la corte para que subsane las omisiones en que

haya podido incurrir, la sentencia dictada no debe revocarse, a menos que se trate de una cuestión fundamental que perjudique sustancialmente los derechos del acusado.

█ Se alega que la corte erró al instruir incorrectamente al jurado sobre la defensa propia. La instrucción que sirve de base a este error dice así:

"La corte desea informar a los señores del jurado que para que exista la defensa propia se necesita que la persona que mata tenga en su mente la creencia razonable de que él va a morir si no mata, o de que va a recibir un grave daño personal, o está expuesto a un grave daño personal; pero por una mera sospecha no está justificada la defensa propia. Se necesita que efectivamente exista ese peligro y que la persona que invoca la defensa propia a su favor crea que existe también ese peligro, y cuando crea eso, no debe usar más defensa que la necesaria para evitar el peligro. Desde luego, que antes de matar está en la obligación de recurrir a todos los medios posibles a su alcance para evitar matar, sin que sea necesario que corra o que huya, pero cualquier medio que esté a su alcance, que no sea producir la muerte del otro, debe primero ser ejercitado y utilizado por el que invoca a su favor la defensa propia, antes de que esté autorizado legalmente a matar, y sólo se debe recurrir a matar en defensa propia cuando ya todos los demás medios se han utilizado en la evitación de la muerte. El jurado debe, para juzgar circunstancia, para juzgar este hecho, tener en cuenta todas las circunstancias y las condiciones del caso."

Se arguye que de acuerdo con las palabras del juez se necesitan dos elementos para justificar la defensa propia: primero, que efectivamente exista el peligro, no admitiéndose que tal peligro sea aparente, sino real y efectivo; y segundo, que la persona que invoca la defensa propia no actúe hasta que todos los demás medios hayan sido utilizados. En sus instrucciones dice la corte que para que exista la defensa propia basta que la persona que mata tenga en su mente la creencia razonable de que va a morir si no mata, o de que va a recibir un grave daño personal, pero luego dice que se necesita que efectivamente exista el peligro. Aun cuando la defensa tenga razón en sus objeciones con respecto al informe de la corte al jurado sobre defensa propia, con-

sideramos que esta instrucción no tiene la importancia que se le atribuye en este caso especial en que el propio acusado, lejos de admitir que diera muerte a Matilde López, declara que no tenía armas y que Matilde se hirió a sí mismo cuando se le pegó su propia navaja en la lucha y resbalaron, y y parece ser que ahí se cortó. No es éste el caso de una persona que alega haber matado para defenderse porque se creyera en peligro de muerte o de grave daño corporal. El acusado, en su testimonio, no toma como defensa para defenderse el peligro real o aparente, desde el momento en que no admite haber matado. El testimonio del acusado le hubiese eximido de responsabilidad de haber sido creído por el jurado, ya que sus palabras tienden a demostrar que no fué autor de la muerte de Matilde López. El jurado, apreciando toda la prueba practicada, rindió, sin embargo, un veredicto de culpabilidad.

Se alega por último que la corte erró al actuar en sus instrucciones movida por parcialidad, prejuicio y pasión contra el acusado. El informe de la corte inferior al jurado no constituye un modelo de instrucción. Algunos errores se han cometido y ya los hemos señalado en esta opinión. Sin embargo, no creemos que la corte inferior haya actuado movida por parcialidad, prejuicio o pasión contra el acusado, después de haber estudiado en su totalidad todas las instrucciones sometidas al jurado.

*Debe confirmarse la sentencia apelada.*