EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SALVADOR BENÍTEZ MÉNDEZ, acusado y apelante.

No. 5135.—*Sometido:* Marzo 13, 1934. *Resuelto:* Junio 26, 1934.

*Fernando B. Fornaris* y *Miguel Bahamonde,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En el presente caso la perjudicada era una enfermera del Hospital Tricoche de Ponce. El acusado era un médico interno del mismo hospital. Éste era un hombre de mucha fuerza física. En la noche de los sucesos en cuestión el acusado se acostó en la cama de su habitación. Llamó a la perjudicada y le pidió que le trajera un vaso de agua, lo cual ella hizo. Entonces el testimonio de ella tendió a demostrar que él le pidió que pusiera el vaso de agua bastante dentro de la habitación, y al hacerlo ella así, él cerró la puerta. Entonces, según ella, él procedió a tener relaciones carnales con ella a la fuerza. Según su declaración, ella luchó con él por espacio de una hora y él le tapó la boca hasta que

finalmente su resistencia fué vencida y entonces tuvo lugar el acto carnal. Ella declaró que durante todo este tiempo le fué imposible gritar. Después del incidente no se quejó a nadie en el hospital hasta el siguiente día, en que se quejó al director. Entonces éste ordenó que se le examinara y se halló que las relaciones carnales habían tenido lugar. Al explicar su demora en comunicarse con alguien en el hospital, la enfermera declaró que el día del suceso allí no había nadie en quien ella tuviera suficiente confianza. Fué repreguntada en repetidas ocasiones respecto a este hecho y declaró una y otra vez que si bien las demás enfermeras del hospital eran sus amigas profesionales, no eran sus amigas íntimas, y que no las consideraba sus amigas personales. Su testimonio a este respecto está sostenido por alguna otra prueba en el caso. Según los autos tienden a demostrar, la misma noche en que ocurrió el incidente ella obtuvo de otra enfermera alguna morfina y consiguió unas pastillas de sublimado y trató de suicidarse. También hubo prueba al efecto de que vomitó a consecuencia del tósigo y que fué llevada a la cama por las enfermeras. Se le aplicó una bomba estomacal u otros eméticos y ella guardaba cama cuando hizo sus revelaciones al director y a una o más de las otras enfermeras. La prueba tiende a demostrar que ella tenía la mente suficientemente despejada cuando se querelló al director, pero, no obstante, la inferencia es que ella estaba bajo los efectos de toda la situación que acabamos de describir.

En este recurso no se suscita cuestión alguna respecto a la suficiencia de la prueba para condenar ni sobre la corroboración del testimonio de la testigo principal. El acusado ocupó la silla testifical y declaró que el acto se realizó voluntariamente por parte de Ramona Martínez, que ella consintió y que en realidad no se usó fuerza alguna.

██ Este es un resumen de los hechos principales del caso, los cuales ni el apelante ni el fiscal exponen en sus alegatos. Nos hemos visto precisados a hacer un resumen de los hechos nosotros mismos, resumen que necesariamente

está sujeto a los hechos adicionales que cualquiera de las partes pudiera haber sugerido debieron haberse expresado. Hemos hecho varios comentarios en causas criminales, así como en civiles, al efecto de que debe hacerse una relación de los hechos principales del caso, y este recurso está sujeto a ser desestimado por haberse dejado de cumplir con ese requisito. No, embargante, consideraremos hasta cierto punto los señalamientos de error suscitados por el apelante.

Por tanto, bajo los hechos de este caso, como el acusado ocupó la silla de los testigos, fué simplemente una cuestión para el jurado determinar quién decía la verdad. Siempre existía la posibilidad de que si la perjudicada mentía, ésta era enteramente cuestión que debía ser determinada por el jurado. Por tanto, si los errores señalados sobre la admisión o exclusión de prueba o sobre las instrucciones no pueden prevalecer, la sentencia debe ser confirmada.

█ Luego de terminarse el examen directo de la perjudicada, una de las primeras preguntas que el letrado del acusado le hizo fué si tenía barros en el momento en que ocurrieron los sucesos. Ahora bien, en realidad ella declaró que sí los tenía. La corte no permitió que se continuara repreguntando en cuanto a si ella tenía barros, y el acusado alega que se cometió error a este respecto. El acusado deseaba demostrar que si ella había tenido una ruda lucha, debían de aparecer signos de violencia en su cara. Hubiese sido enteramente posible para el acusado, de ser importante, demostrar en alguna forma que la cara de la perjudicada no presentaba señales de haber sufrido daño alguno. Toda la prueba, según la recordamos, tendió a demostrar que la perjudicada no presentaba en su cuerpo indicio alguno de haber sufrido violencia externa. No hallamos que se cometiera error alguno, y de haberlo, el mismo no fué perjudicial.

█ Los señalamientos segundo, tercero y cuarto se refieren a la negativa de la corte a permitir que el acusado hiciera un experimento físico, con la participación de ella, para ilustrar lo que pudo haber ocurrido en la lucha habida

entre ella y el acusado. El letrado de éste trató de suponer ciertas cosas como ocurridas, sobre las cuales no hubo prueba alguna, a fin de determinar la posibilidad de cómo ocurrió la lucha, o algo a ese efecto. Conforme la vemos nosotros, la cuestión participaba de la naturaleza de una pregunta hipotética. La corte no vió que la misma fuera aplicable bajo los hechos de este caso, y no hallamos que se cometiera error alguno.

Hubo algún conflicto entre la corte y el letrado de la defensa respecto a si la testigo había declarado sobre el móvil que ella tuvo al no comunicarse con las demás enfermeras durante la noche del suceso, pero aun si la corte hubiese estado equivocada, el error no fué perjudicial y su actuación al impedir que continuara el examen fué igualmente inofensiva. Sería conveniente decir a este respecto que hallamos que la corte demostró paciencia extremada durante el juicio de este caso. El examen de repregunta de la testigo principal y de algunos de los otros testigos fué innecesariamente largo y detallado. El letrado de la defensa en diversas ocasiones solicitó de la testigo que dijera repetidas veces cuestiones sin importancia que habían sido declaradas durante el examen directo. Los autos nos parecen algo confusos, más tenemos la idea de que la corte permitió la pregunta o su equivalente.

El fiscal presentó una objeción, que la corte sostuvo, a una repregunta hecha por el acusado respecto al conflicto existente entre su idea de suicidarse y la idea de comunicar el hecho algún día a alguien. La pregunta en su forma fué demasiado elaborada y la corte estuvo en lo cierto al excluirla.

El séptimo señalamiento de error se refiere a una pregunta hecha por la corte más o menos en el mismo campo. Ella despejó la situación y no hallamos que hubiera abuso de discreción.

Los señalamientos de error octavo, noveno y décimo se refieren a la acción de la corte al permitir al Doctor Grauláu, el director, y a otros testigos declarar sobre la que-

rella que Ramona Martínez les hizo el día siguiente a los sucesos y sobre los detalles del mismo. Al discutir estos señalamientos de error, el apelante no hace referencia a las páginas de los autos en que aparecían las declaraciones, y la discusión de estos errores versa en parte sobre un punto no incluído en los señalamientos. El apelante discute los extensos detalles de la querella presentada por dicho testigo, que no fueron objeto de los señalamientos de error.

Respecto al undécimo error, no tenemos dudas de que la corte estaba en lo cierto al manifestar que el acusado, en el examen redirecto, hacía preguntas que debieron haberse hecho en un examen directo por el mismo acusado. Igual sucede con el duodécimo señalamiento.

El señalamiento de error décimotercero es como sigue:

"La corte cometió grave error al permitir al Sr. Fiscal presentar como prueba la declaración prestada por el acusado Salvador Benítez Méndez, en un juicio celebrado anteriormente sobre los mismos hechos, violando así los derechos constitucionales del acusado."

El objeto del fiscal al presentar la declaración anterior del acusado fué por las admisiones que pudiera contener. La evidencia así ofrecida no era objetable en el sentido de que obligaba al acusado a declarar contra sí mismo, toda vez que ya él había declarado voluntariamente en el juicio anterior. Las dos declaraciones del acusado no variaban mucho y la que se presentó podría considerarse como acumulativa y no perjudicial.

La corte denegó las siguientes instrucciones:

"El hecho de que Ramona Martínez no tenía signos aparentes de violencia, establece la presunción de que ella consintió.

"Entre las circunstancias corroborativas presentes generalmente en todo caso de violación, están los signos y huellas aparentes de la lucha que quedan sobre las ropas o cuerpo de los participantes.

"El no existir signos exteriores de violación (sic) constituye una fuerte presunción de que Ramona Martínez no opuso resistencia."

No hallamos que ninguna de ellas expusiera la ley correc-

tamente. El tercer párrafo no ha sido copiado correctamente de los autos, pero quizá no hay diferencia alguna en su efecto.

Bajo los señalamientos 15 y 16 el apelante se queja de ciertas instrucciones dadas por la corte inferior. Si se leen las instrucciones en su totalidad, no hallamos que en ellas se cometiera verdadero error. Sea ello como fuere, el acusado no dió a la corte oportunidad alguna para corregir cualquier ligero error que pudiera haber cometido. La jurisprudencia de esta corte es enteramente clara al efecto de que para que el acusado pueda aprovecharse en apelación de cualquier error que no sea fundamental cometido en las instrucciones, han debido presentarse objeciones y excepciones en la corte inferior. *Pueblo* v. *Maldonado,* 45 D.P.R. 417; *Pueblo* v. *Estrella,* 45 D.P.R. 462; *Pueblo* v. *Mercado,* 46 D.P.R. 153.

En una parte de su alegato el apelante sostiene que la perjudicada, al verse maniatada por el acusado, pudo mover la cabeza de un lado para otro, impidiendo así que se le tapara la boca y colocándose en situación de gritar, pero, sin embargo, el hecho de no haber gritado puede explicarse en varias formas fuera de la mera imposibilidad física de gritar. La perjudicada pudo haber estado completamente aterrorizada, según tiende a demostrar parte de su testimonio.

No hallamos prueba alguna de parcialidad o prejuicio en la actuación de la corte inferior ni error alguno al negarse a conceder un nuevo juicio.

*La sentencia y la resolución apeladas deben ser confirmadas.*