El Pueblo de Puerto Rico, demandante y apelado, *v.* José Miguel Negrón, acusado y apelante.

No. 3262.—*Visto:* Enero 10, 1928.   *Resuelto:* Marzo 8, 1928.

1. Derecho Penal—Juicio—Argumentos y Conducta del Abogado *(Counsel)*— Intervención de la Corte—Informe de Apertura.—Cuando el abogado en su informe de apertura *(opening statement)* hace manifestaciones, respecto a la defensa de locura que se propone probar, que envuelven una asunción indebida de lo que puede constituir dicha defensa, la corte tiene poder para llamar la atención del jurado, bien durante el curso del informe o una vez terminado éste y sin necesidad de esperar a dar las instrucciones finales, para corregir las manifestaciones erróneas exponiendo lo que ella cree que debe probarse.

2. Homicidio—Juicio—Instrucciones—Proceso por Asesinato—Instrucciones Referentes al Homicidio.—Cuando la prueba tiende a demostrar que la muerte de una persona por otra fué deliberada y premeditada, la corte inferior está justificada en no dar instrucciones sobre homicidio voluntario.

3. Derecho Penal—Juicio—Necesidad, Requisitos y Suficiencia de las Instrucciones—Instrucciones Sobre Presunciones en General—Suficiencia de Instrucción Sobre la Presunción de Evidencia del Acusado.— Una instrucción al efecto de que la presunción de inocencia a favor del acusado desaparece cuando el jurado se retira a deliberar es errónea.

4. Derecho Penal—Apelación y Error y Certiorari—Revisión—Errores sin Importancia—Instrucciones al Jurado—Presunción de Inocencia.—Si bien una instrucción al efecto de que la presunción de inocencia a favor del acusado desaparece cuando el jurado se retira a deliberar es errónea, sin embargo cuando esa presunción es destruida por las propias manifestaciones del acusado aceptadas por la defensa durante el juicio, el error cometido no es perjudicial.

Sentencia de *Angel Acosta Quintero,* J. (Ponce), condenando al acusado por delito de asesinato en segundo grado. *Confirmada.*

R. *Martínez Nadal* y *Leopoldo Tormes,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Se trata de un caso en que el acusado durante largo tiempo había enamorado, o trataba de enamorar, a Isabel Rodríguez. Aparentemente, llegó una época en que sus requiebros dejaron de ser recibidos con beneplácito. La madre de la muchacha, según el acusado, se oponía en todo sentido. No obstante, el acusado, en busca de su objetivo, rondaba la casa de Isabel Rodríguez en Ponce. Así lo hizo el 1º de julio de 1926. En dicho día, mientras Isabel Rodríguez preparaba un pollo en su casa, se presentó el acusado y en distintas veces le hizo varios disparos, por lo menos dos de los cuales pudieron ser fatales, muriendo ella a consecuencia de tales disparos. El acusado dijo que le había disparado a la muchacha, y que estaba dispuesto a matarse si ella moría.

Al ser acusado del delito de asesinato, el acusado hizo la alegación de inocente, pero el fin principal de la defensa fué probar que él estaba demente.

Por el momento, nos abstenemos intencionalmente de decir que los esfuerzos de la defensa tendieron a demostrar que el acusado no era responsable de sus actos al hacer los disparos, ya que el primer señalamiento de error gira algo sobre ese extremo.

[1] El primer señalamiento de error específicamente lee como sigue:

"La corte cometió error grave, perjudicial para el acusado, al regular el orden de la presentación de la evidencia por parte del acusado, haciendo ante el jurado que entendía del caso manifestaciones perjudiciales al acusado, y asumiendo el cargo de Fiscal durante el juicio que se ventilaba."

De acuerdo con la ley, el orden de la prueba y la dirección del juicio descansan en la sana discreción del juez sentenciador. El apelante se queja en realidad de que cuando el fiscal había terminado su caso, y antes de que el acusado comenzara a presentar su prueba, la corte hizo ciertos comentarios respecto a cuál debe ser el carácter de la prueba de locura en un juicio como el presente. Sin embargo, los abogados de la defensa ya habían hecho su informe de apertura al jurado. Si bien el acusado ha dejado de transcribir el informe de su abogado ante el jurado al comenzar su defensa, es evidente que hizo manifestaciones respecto a lo que se proponía probar, lo cual, en opinión de la corte envolvía una asunción indebida de lo que podía constituir la defensa del acusado. La corte tiene amplio poder para llamar la atención de los abogados, mientras se dirigen al jurado, respecto a lo que ella cree que debe probarse; corregirlos cuando ellos exponen en su argumentación la ley incorrectamente o cuando asumen una situación de hechos no demostrada por la prueba; contenerlos y criticarlos cuando se expresan en un lenguaje abusivo y denigrante contra los testigos de El Pueblo, o cuando continúan argumentando sobre un punto que ya ha sido resuelto adversamente por la corte. 16 C. J. 830.

Si bien el texto y los casos citados en ese tomo son aplicables más bien a los informes finales hechos por los abogados, los motivos en que se basa la ley son los mismos para cualquier informe hecho por los abogados al jurado.

No podemos convenir con la defensa en que la corte debe guardar silencio y esperar hasta que le dé las instrucciones al jurado para corregir supuestas manifestaciones erróneas hechas por los letrados.

La corte dijo a los abogados de la defensa que debían estar preparados para demostrar, de conformidad con los casos de *Fisher* v. *People,* 23 Ill. 218, y *People* v. *Messersmith,* 61 Cal. 246, 248, que antes de poderse eximir de responsabilidad a un hombre, debía demostrarse que él no se daba cuenta de las consecuencias de sus actos. Resolvemos que ésta es una exposición correcta de la ley en sus fases principales. Aún si la corte hubiese estado ligeramente equivocada, sin embargo, la defensa ha dejado de suministrarnos una transcripción completa demostrativa de lo que dijo en su informe. Además, durante el juicio se le permitió al acusado que entrara libremente en la historia de su vida y que presentara peritos sobre locura. No hallamos que se cometiera error o perjuicio.

Hubo considerable discusión entre la corte y los abogados sobre cuál era la ley, y la corte dijo al jurado que no debía atender lo que había dicho, sino que debía fijar su mente tan sólo en la prueba practicada. Esta advertencia fué repetida en las instrucciones. Como en los autos no hallamos nada lesivo en las observaciones de la corte, el caso no fué perjudicado.

[2] El segundo y cuarto señalamientos de error leen como sigue:

"2. La corte cometió error al expresar como expresó cuando instruía a los señores del jurado que entendían en este caso, que no daba instrucciones de homicidio voluntario y sí solamente de asesinato en primer y segundo grado, y que no admitiría un veredicto de homicidio voluntario.

"4. La corte cometió error grave y perjudicial para el acusado, al negarse como se negó a dar instrucciones al jurado, que solicitó el acusado en tiempo y forma en el sentido de que podían traer un veredicto de homicidio voluntario en este caso contra el acusado."

Para sostener su posición de que la corte debió haber dado instrucciones sobre homicidio voluntario, el acusado descansa en la declaración prestada por el detective Daniel Pérez Sánchez que aparece en la página 102 de los autos,

y en la de Ramón Martínez Chapel, capitán de la policía, que aparece en las páginas 168 y 169 de los autos. Transcribimos las dos declaraciones:

La de Daniel Pérez Sánchez es como sigue:

"Cuando lo conducíamos el capitán y yo, por el camino le pregunté qué había motivado el que él le diera muerte a la joven esa, entonces él dijo que hacía tres o cuatro años tenía relaciones con ella, y que por la oposición de la madre él había decidido matarla a ella y matarse él, que él había llegado a la casa con el revólver en el bolsillo, en un bolsillo y las balas en otro, que en presencia de ella cargó el revólver y le hizo varios disparos; después que la vió caer, se hizo un disparo él, pero la bala no salió, entonces se dió a la fuga para llegar a la casa de los padres y despedirse de ellos y entregarse a la policía."

La declaración de Ramón Martínez Chapel fué como sigue:

"Sí, señor; cuando yo llegué, yo le pregunté dónde estaba el revólver, me dijo que se le había perdido en un cañaveral, y al efecto, me enseñó un cañaveral que se veía de las oficinas del hipódromo: yo lo cogí en un automóvil, lo traje para fiscalía y por el camino él me dijo: yo quise matar esa muchacha y matarme yo porque la madre de ella me tenía abacorado (uso las palabras de él) y me quise disparar un tiro y el tiro no salió: si ella se muere, yo me mato."

Convenimos con el Fiscal en que nada hay en esta prueba que dé derecho al acusado a que se den instrucciones sobre homicidio. En realidad de verdad, eliminando la cuestión de locura, la prueba tendió a demostrar que la muerte de Isabel Rodríguez fué deliberada y premeditada. La actitud de la corte estaba justificada por nuestras decisiones en los casos de *El Pueblo* v. *Alméstico,* 18 D.P.R. 321, y *El Pueblo* v. *Lassalle,* 18 D.P.R. 422.

El tercer señalamiento de error es como sigue:

"La corte cometió error al manifestar como manifestó a los señores del jurado que entendían de esta causa y al tiempo de instruirles, que la defensa en este caso había aceptado que el caso que se ventilaba era uno de asesinato en primer grado, cuando esto no ocurrió."

No podemos convenir con el fiscal en que la defensa de locura es inconsistente con otras defensas que el acusado pueda presentar. Un hombre puede no haber hecho los disparos y sin embargo estar demente y defenderse por uno y otro fundamento. Sin embargo, la corte no estaba equivocada. Mientras el Capitán Chapel declaraba, según ya hemos transcrito de la página 169, surgió la cuestión de si las manifestaciones del acusado habían sido o no voluntarias, y el abogado del acusado dijo: "Yo creo que fué espontánea; yo hago mía esa declaración." Unido esto a otras manifestaciones y actitudes del acusado que aparece de los autos, era enteramente claro que el acusado aceptó el hecho de la muerte, y que, bajo las circunstancias, el delito cometido fué el de asesinato.

El quinto señalamiento de error discute la suficiencia de la prueba, pero nuevamente el acusado descansa en que la prueba dejó de demostrar otro delito que el de homicidio. La corte dió amplias instrucciones respecto a locura, y no hallamos que el jurado se equivocara en la apreciación de la prueba. Además, la corte dió al jurado la oportunidad de rendir un veredicto de asesinato en segundo grado, aunque estamos inclinados a creer que la prueba tendió a demostrar un caso de asesinato en primer grado.

[3, 4] No podemos terminar esta opinión sin hacer mención de lo que fué evidentemente un error de la corte al dar sus instrucciones al jurado. Según aparece de la página 14 de los autos, la corte dijo al jurado en sus instrucciones que la presunción de inocencia acompaña al acusado mientras está en la corte, y entonces agregó: ". . . esa presunción desaparecerá cuando os retiréis al cuarto de deliberaciones, cuando yo entregue a vosotros el caso, nombre el presidente del jurado y os marchéis bajo la custodia del márshal, a vuestro cuarto de deliberaciones, entonces es cuando ha desaparecido la presunción de inocencia y entonces es cuando podréis discutir si el acusado es inocente o el acusado es un culpable. . ." Entonces la corte continuó diciendo que

cuando se levanta la defensa de locura, ésta debe establecerse con preponderancia de prueba.

La manifestación de que desaparece la presunción de inocencia cuando el jurado se retira a deliberar, es enteramente errónea. Doquiera que exista la presunción de inocencia, ésta continúa a favor del acusado hasta el momento mismo en que se rinde el veredicto. El jurado debe tenerla presente en la sala de deliberaciones y en todo tiempo hasta que en realidad se llegue a un veredicto. No sabemos lo que la corte tuvo en mente, pero no se tomó excepción alguna, y aparentemente, los abogados sabían con qué se relacionaban las observaciones hechas, probablemente con motivo de la defensa de locura. Casi en cualquier otro caso nos hubiéramos sentido obligados a ordenar la revocación. Dado, sin embargo, el hecho de que la presunción de inocencia fué destruida por las propias manifestaciones del acusado aceptadas por la defensa, hallamos que el error cometido a este respecto no fué perjudicial.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Señor Texidor no intervino.

EN RECONSIDERACIÓN

San Juan, Puerto Rico, marzo 29, 1928.

Los abogados del apelante solicitan la reconsideración de nuestra opinión, toda vez que temen que parte del lenguaje usado en ella pudiera ser interpretado en el sentido de referirse a supuesta conducta indebida de su parte durante la vista del caso, o en su alegato. Estamos muy de acuerdo en que la única cuestión susceptible de comentario que ha ocurrido fué que los abogados expusieron la ley erróneamente en su informe inicial al jurado. Sin embargo, el lenguaje usado por este tribunal es una reproducción exacta de lo dicho en 16 C. J. 830, al que se hace referencia en la opinión. Nos pareció que la cita era una exposición correcta de los privilegios y deberes de los jueces. También estamos de acuerdo en que las cortes y los letrados deben

ser mutuamente corteses, pero no vemos que una u otra parte cometiera falta alguna en este caso.