Eʟ Pᴜᴇʙʟᴏ ᴅᴇ Pᴜᴇʀᴛᴏ Rɪᴄᴏ, demandante y apelado, *v.* Eᴜɢᴇ-
ɴɪᴏ Mᴇʀᴄᴀᴅᴏ @ Tɪᴛᴏ ᴅᴇ Oʀᴏ, acusado y apelante.

No. 4711.—*Sometido:* Marzo 24, 1933. *Resuelto:* Febrero 2, 1934.

*Arturo Aponte,* abogado del acusado apelante; *R. A. Gómez, Fiscal,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

El apelante fué acusado ante la Corte de Distrito de Humacao del delito de homicidio voluntario por haber dado muerte, en un arrebato de cólera, a Evangelista Becerril, un ser humano.

Después del ciclón de San Felipe, la Guardia Nacional de Puerto Rico fué movilizada para determinados fines. El acusado, Eugenio Mercado, conocido también como Tito de Oro, era un sargento de la Guardia Nacional. Para ir de Yabucoa a Luquillo, donde el acusado debía hacerse cargo del puesto, tenía que pasar por Fajardo. Iba acompañado por un capitán de la Guardia Nacional, quien al llegar a Fajardo se fué a descansar y dió permiso al acusado para que visitara a una hermana de este último. El acusado hizo esto; y al regreso de esta visita fué que ocurrieron los hechos del presente caso. Vestía el uniforme de la Guardia Nacional. Entró a un cafetín en que se hallaba Evangelista Becerril. El jurado tenía derecho a creer de la prueba aportada que la provocación original, especialmente en lo que a palabras se refería, procedió del acusado. La prueba indubitada en el caso es que hizo seis disparos, de los cuales cuatro fueron dirigidos hacia la víctima y uno de ellos le hirió y mató.

El acusado trató de plantear tres defensas en la corte inferior: primera, que entró al cafetín en cumplimiento de sus deberes como miembro de la Guardia Nacional, toda vez

que allí se llevaba a cabo un juego a lo prohibido; segunda, que mató en defensa propia; y tercera, que había sido absuelto por una corte marcial. En lo que el apelante insistió principalmente fué que actuó en defensa propia.

En la silla testifical el acusado dijo que no disparó hasta que vió una cuchilla en manos del occiso. Por tanto, el acusado admitió claramente que él disparó contra Evangelista Becerril. La prueba del Pueblo tendió a demostrar que el interfecto no tenía arma alguna en su poder, y la única prueba tendente a sostener la teoría del acusado fué que después de la lucha, al recoger al interfecto, se le halló una cuchilla en sus zapatos o medias. De no haber error en la admisión de prueba o en las instrucciones, el jurado estuvo enteramente justificado al rendir un veredicto de culpabilidad. Fuera del testimonio del acusado nada hallamos que demuestre que Becerril tuviera una cuchilla en su poder, o que hiciera algo que diese al acusado derecho a disparar contra él en defensa propia.

El primer señalamiento es que la corte erró al no admitir como prueba un documento que contenía la investigación practicada por una corte militar, que demostraba la acción por ésta tomada, a fin de atacar la credibilidad de los testigos de cargo. Los autos revelan que en una u otra forma el hecho de haber sido el acusado absuelto por una corte marcial fué traído ante el jurado, desde luego, indebidamente. Decimos "indebidamente", porque en una causa criminal la condena o absolución de una persona por una corte marcial no tiene peso alguno respecto a la culpabilidad o inocencia del acusado en otro juicio. Fácilmente puede imaginarse que si una corte marcial condena a un soldado, en un juicio ante las autoridades civiles él podría propiamente oponerse a que tal fallo condenatorio sea ofrecido como prueba. Decimos esto independientemente de cualquier cuestión relativa a exposición anterior por el mismo delito (*jeopardy*).

Durante el juicio, cuando cada uno de los testigos presenciales de El Pueblo ocupaba la silla, era examinado por el

abogado de la defensa y preguntado si no había hecho manifestaciones inconsistentes ante la corte marcial y entonces la corte permitía que el letrado leyera a los testigos, o quizá que les mostrara aún, sus supuestas manifestaciones inconsistentes. Fué una oportunidad absoluta por parte del acusado para atacar la credibilidad de dichos testigos. Cuando el acusado trató de ofrecer en su totalidad el documento que contenía los procedimientos ante la corte marcial, la corte, al oponerse el fiscal, denegó su admisión. El documento, además de las supuestas inconsistencias, contenía muchas otras cuestiones impertinentes, como, por ejemplo, las declaraciones de otros testigos. Al letrado del acusado se le permitió en parte que demostrara, leyéndoles, que los testigos habían hecho manifestaciones inconsistentes, pero el acusado no tenía derecho a insistir en que mucha materia impertinente o inadmisible fuese llevada a la consideración del jurado.

El caso de *Sosa* v. *Cardona,* 30 D.P.R. 280, citado por el apelante, no es aplicable. Allí el error imputado era que la declaración de un testigo fué indebidamente admitida en evidencia, pero nada hubo que demostrara que el escrito fuera ofrecido como prueba, sino simplemente que se permitió que se leyeran las manifestaciones inconsistentes.

■ El apelante hace objeción a algunas de las instrucciones de la corte. Nunca es un error por parte de la corte llamar la atención del jurado hacia una exposición errónea de la prueba, hecha por el letrado de la defensa. Por consiguiente, la corte no cometió error al manifestar que un testigo no había dicho que había visto una cuchilla en manos de Becerril. La declaración del testigo fué al efecto de que después de la lucha se halló una cuchilla cerrada. El fiscal indica que ni aun ante la corte marcial dijo realmente este testigo que vió una cuchilla en manos de la víctima. Que es un privilegio y deber de parte de la corte llamar la atención del jurado hacia errores del letrado, es evidente, según aparece en Blashfield sobre Instrucciones al Jurado, tomo I, págs.

570 y 573, y en nuestra decisión en el caso de *El Pueblo* v. *Negrón,* 37 D.P.R. 822.

La misma regla es aplicable a un comentario similar hecho por la corte en otro respecto.

■ La corte también dijo que un testigo, aunque vaciló un poco, declaró que Becerril frecuentemente tomaba licor. La objeción se dirigió a que la corte dijo que el testigo vaciló. Si fué cierto que el testigo vaciló, ello sería evidente al jurado, y sea como fuere, el comentario no era perjudicial, especialmente si no se llamó la atención de la corte específicamente hacia el mismo.

■■ El tercer señalamiento es que la corte dijo que en el cafetín en que tuvieron lugar los disparos no se cometía ningún delito público. El apelante sostiene que con esto se invadieron las atribuciones del jurado. La prueba no reveló que nadie estuviese jugando a lo prohibido. Si surgió la cuestión de si se jugaba o no a lo prohibido, la corte tenía derecho a instruir al jurado, como cuestión de derecho, que no se estaba jugando a lo prohibido. Según sostiene el fiscal, la gente tiene derecho a jugar baraja, y la presunción de inocencia protege a las personas que así juegan, hasta que se demuestre lo contrario.

La contención del apelante es que él estaba en funciones policíacas debido a que la Guardia Nacional había sido movilizada, y que tenía derecho a entrar en el cafetín a practicar una investigación. Aun si se hubiese tratado de un policía, la corte hubiera tenido derecho a hacer el mismo comentario. Cualquier persona puede entrar en un café y ni un policía ni un miembro de la Guardia Nacional tiene privilegio particular alguno al entrar al mismo, a menos que en realidad allí se esté jugando a lo prohibido.

No hemos examinado los autos con mucho cuidado a este respecto, pero del examen que hemos hecho nada hemos hallado que demuestre que la Guardia Nacional fué movilizada con el fin de proceder contra infracciones a la ley penal, no

importa de la índole que fueran, sino que fué movilizada para contribuir a preservar el orden y quizá para otros fines.

■■ El cuarto señalamiento de error es tal vez un poco más serio. La corte dijo que el apelante no estaba cumpliendo ningún deber público en Fajardo. Empero, según indica el fiscal, nada hay en los autos que demuestre que él estaba cumpliendo un deber público. El fué al cafetín en uniforme militar. Un funcionario encargado de conservar la paz pública de acuerdo con la ley, es reconocido inmediatamente como tal si viste el uniforme corriente, pero el uniforme de la Guardia Nacional de ordinario no tiene significación especial. Al igual que a nosotros, al fiscal le fué imposible encontrar algo en los autos que demostrara que el acusado tuviera algún deber público que cumplir en Fajardo. Sin embargo, aun si un policía hubiese entrado en el cafetín, ello no hubiera sido con motivo de ningún deber público, a menos que se demostrara algo en sentido contrario. Además, hemos tenido dudas respecto a si un miembro de la Guardia Nacional, al ser movilizado este cuerpo, tiene los privilegios y atributos de un funcionario encargado de mantener la paz pública.

No obstante, la corte en sus instrucciones dió al jurado el derecho a decidir para sí si de la única prueba existente sobre el particular—la declaración del acusado—éste actuaba como funcionario público.

■ En sus instrucciones la corte dijo que bajo ciertas circunstancias una persona no tenía derecho a matar, y si la oportunidad era una perfectamente clara, debía aun retroceder. La corte no dijo, según asume el acusado, que un hombre siempre está obligado a retroceder. Por el contrario, la instrucción en su totalidad demuestra que la corte dijo que un hombre tenía derecho a atacar cuando se hallaba en peligro aparente.

En relación con todas estas instrucciones, hemos examinado los autos y no hallamos que se tomara ninguna excepción específica. Por ende, el caso cae claramente dentro de

los principios enunciados en *El Pueblo* v. *Maldonado,* 45 D. P.R. 417. A la corte debe darse siempre la oportunidad de corregir sus errores. Si, por ejemplo, el acusado hubiese llamado la atención de la corte hacia alguna de la jurisprudencia de este Tribunal con respecto a defensa propia, el juez hubiera tenido la oportunidad de adaptar sus instrucciones a la doctrina realmente establecida. De nuestra decisión en el caso de *El Pueblo* v. *Barrios,* 23 D.P.R. 831, se desprende claramente que una persona raras veces está obligada a retroceder.

El sexto señalamiento, relativo a los comentarios de la corte sobre los argumentos del letrado de la defensa, ha sido anteriormente discutido.

*Debe confirmarse la sentencia apelada.*