Eʟ Pᴜᴇʙʟᴏ ᴅᴇ Pᴜᴇʀᴛᴏ Rɪᴄᴏ, demandante y apelado, *v.* Mᴀɴᴜᴇʟ Hᴇʀɴᴀ́ɴᴅᴇᴢ, acusado y apelante.

No. 5667.—*Sometido:* Noviembre 7, 1935. *Resuelto:* Enero 21, 1936.

*Cayetano Coll y Cuchí* y *Cayetano Coll Cuchí, Jr.,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

Eʟ Jᴜᴇᴢ Pʀᴇsɪᴅᴇɴᴛᴇ Sᴇɴᴏʀ Dᴇʟ Tᴏʀᴏ, emitió la opinión del tribunal.

Manuel Hernández fué acusado en unión de Luis Alfredo Anavitate por el Fiscal del Distrito de Ponce como autor de un delito de asesinato en segundo grado, consistente en haber lanzado con malicia premeditada un automóvil sobre Pablo

Guzmán, infiriéndole varias contusiones a consecuencia de las cuales falleció pocas horas después.

Alegó Hernández que era inocente y solicitó juicio por jurado. Celebrado éste, por separado, fué Hernández declarado culpable de homicidio voluntario. Pidió la nulidad del veredicto y se declaró sin lugar su petición. El 3 de octubre de 1934 la corte dictó sentencia condenándolo a siete años de presidio. No conforme, apeló para ante este tribunal.

Señala en su alegato tres errores cometidos a su juicio por la corte al dar instrucciones al Jurado sobre homicidio voluntario sin que las solicitara, al condenarlo por homicidio voluntario y al negarse a anular el veredicto del Jurado. Los tres señalamientos de error se estudiarán conjuntamente.

■ La prueba de cargo demostró que el 29 de octubre de 1933, el acusado transitaba por las calles de Ponce en un automóvil público de su padre, guiado por Luis Alfredo Anavitate. Cerca de la Plaza del Mercado, Bautista Silvagnoli, que se encontraba en estado de embriaguez y a quien acompañaban dos niñitas hijas suyas, fletó el carro para ir a su casa pasando por la Central Mercedita. Al principio el *chauffeur* se opuso por estar prohibida la entrada de automóviles públicos a la Central, pero se decidió al fin esperando que se hiciera una excepción por ser Silvagnoli y el padre de Hernández empleados de la misma.

En el asiento delantero iban sentados el *chauffeur* y Hernández y en el trasero Silvagnoli y sus hijas. Al llegar al portón de la Central fueron en efecto detenidos por el guarda Pablo Guzmán. Se trabó una discusión, desmontándose Silvagnoli insistiendo cerca del guarda que permitiera el paso, invocando su condición de empleado. Replicó el guarda que tenía que cumplir sus órdenes y dijo a Silvagnoli "siéntate aquí en este cajón y espera la guagua que tú estás jumo." Se agrió entonces la disputa y Hernández se tiró del auto, echó a Silvagnoli dentro de él y dijo al *chauffeur* "zúmbale el carro encima a ese viejo (el guarda) que no vale más de

veinte reales'', y arrancó el carro y arrastró al viejo más de cincuenta pies, siguiendo ''a una velocidad horrible.''

Horas después murió el guarda. Practicada la autopsia de su cadáver por el Doctor Enrique Matta se .encontró que había una fractura en el hueso del muslo, en la inserción del hueso con la cadera, un vaso roto entre los tejidos y varias erosiones, llegando el doctor a la conclusión de que la muerte se debió a un choque traumático.

La prueba de descargo tendió a contradecir la de cargo en los dos extremos que siguen: el acusado no iba en el asiento delantero, sino en el trasero; no fué el acusado, sino Silvagnoli, el que dijo al *chauffeur:* ''Síguele, pisa a ese viejo que no vale nada.''

El conflicto fué resuelto por el Jurado en contra del acusado, sin que exista motivo justificado alguno para alterar su decisión. Las cuestiones que el acusado suscita deben estudiarse y resolverse, pues, a base de la ocurrencia del suceso tal y como surge de la prueba del Pueblo.

Después de haber dado la corte al jurado instrucciones completas sobre el delito de asesinato en segundo grado imputado al acusado, se expresó así:

''La Corte va a instruir también a los señores del Jurado sobre el delito de Homicidio Voluntario, porque dentro de una acusación de asesinato en segundo grado está comprendida una acusación por homicidio voluntario.

''Si de acuerdo con la prueba resultare que ha habido elementos característicos de un delito de homicidio voluntario, entonces el jurado, de acuerdo con las instrucciones de la Corte, podrá dar un veredicto de homicidio voluntario. Dice la ley con respecto al delito de homicidio: 'Homicidio es dar muerte ilegal a un ser humano sin que medie malicia.' El homicidio es de dos clases: Voluntario e Involuntario. Voluntario es cuando ocurre con motivo de una súbita pendencia o arrebato de cólera; en el calor de la pasión, en un acto de coraje.''

Y el acusado, que no excepcionó las instrucciones cuando fueron trasmitidas, .sostuvo luego en una moción pidiendo la nulidad del veredicto que presentó a la Corte sentenciadora

y que fué por ésta declarada sin lugar y sostiene ahora ante esta Corte Suprema que la corte de distrito cometió error perjudicial al trasmitir al Jurado la instrucción transcrita porque ni fué pedida por él ni la prueba la sostiene. Invoca el caso de *Johnston* v. *Commonwealth*, 186 S. W. 655, en el que se estableció la siguiente doctrina:

"En una causa por asesinato, constituye error una instrucción al efecto de que el Jurado puede rendir un veredicto de asesinato u homicidio, cuando no hay evidencia respecto a este último delito.

"Tal error es perjudicial cuando el veredicto es de homicidio."

Podríamos negarnos a discutir el error señalado basándonos en la falta de excepción a la instrucción impugnada, pero tratándose de algo que pudiera ser fundamental procederemos a su estudio. *Pueblo* v. *Benítez*, 47 D.P.R. 78, 88, y casos en él citados.

Tendría quizá razón el apelante de acuerdo con la jurisprudencia que invoca si la prueba en este caso no justificara la instrucción, si los hechos que el acusado realizara sólo pudieran calificarse de asesinato y no de homicidio.

Mas no es así. A nuestro juicio la prueba justifica la instrucción. Es cierto que la discusión comenzó entre Silvagnoli y el guarda y se agrió cuando el guarda hizo resaltar el estado de embriaguez en que Silvagnoli se encontraba, pero lo es también que en ella tuvo interés directo e intervino desde un principio el acusado. Éste era hijo del dueño del carro público que fletó Silvagnoli para que lo llevara a su casa y andaba con el *chauffeur* en su negocio. Aceptó el viaje con conocimiento del obstáculo que se presentaría como se presentó para terminarlo con éxito y percibir como era natural su importe. La actitud del guarda lo afectó directamente. Fué el guarda alguien que salió a su encuentro, alguien que se opuso a la realización de sus propósitos, alguien que no cedió a los ruegos, ni a los argumentos, alguien a quien sólo podía vencerse por medio de la fuerza bruta.

La conducta del guarda no hubiera podido provocar la cólera de una persona normalmente correcta, pero sí la de una

persona que es capaz de realizar los actos que perpetró el acusado.

Lo que éste hizo sólo puede brotar de un corazón pervertido y maligno o de uno—de instintos criminales por supuesto —arrebatado por la cólera. De ahí que estén justificadas ambas calificaciones, la de asesinato en segundo grado y la de homicidio habiendo actuado en su consecuencia la corte de acuerdo con los hechos y la ley al trasmitir la instrucción.

Si no hubo error en la instrucción, debe necesariamente concluirse que tampoco lo hubo en el veredicto y en la sentencia que a la instrucción siguieron.

En tal virtud, no habiéndose cometido ninguno de los errores señalados, *debe el recurso declararse sin lugar y confirmarse la sentencia recurrida.*