EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ CARDONA, *alias* DON PEPITO, acusado y apelante.

Núm. 5646.—*Sometido:* Diciembre 20, 1935. *Resuelto:* Mayo 29, 1936.

*C. Iriarte, F. Fernández Cuyar, Héctor González Blanes y James R. Beverley*, abogados del apelante; *R. A. Gómez, Fiscal, y Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

José Cardona Serrano, (*a*) Don Pepito, fué convicto del delito de asesinato en segundo grado por haber disparado contra Juan Cosme y dádole muerte. El apelante señala varios errores con respecto a las instrucciones, pero en la corte inferior no se tomaron excepciones específicas· contra las mismas. En realidad, antes de hacer un resumen de los hechos, la corte llamó la atención respecto a que uno de los letrados del acusado se había visto precisado a ausentarse del salón de la corte mientras se transmitían las instrucciones.

En parte de las instrucciones, y más particularmente de los autos, se desprende que los hechos tendentes a sostener el caso de El Pueblo fueron que el acusado en 11 de junio de 1933 estaba empleado como guardabosque a cargo de ciertos terrenos o manglares pertenecientes a El Pueblo de Puerto Rico, situados en Santurce. Un número de personas han construído sus casas en esta región. Podemos decir, de paso, que el hecho de si la casa que el occiso ocupaba per-· tenecía o no al Gobierno pudo haber tenido algún peso, de

seguirse el testimonio presentado por el acusado. El día de los disparos Juan Cosme se le presentó al acusado y le dijo: "Cuando tengas que llamar la atención sobre algo dímelo a mí y no a mi esposa." Entonces el acusado dijo que él era tan hombre como cualquier otro y que le había dicho eso a la esposa del interfecto y se lo repetiría a él, y al decir esto le dió al occiso una bofetada. Entonces el acusado sacó su revólver y le dijo a la víctima: "Usted está arrestado, véngase." El interfecto contestó que no estaba dispuesto a dejarse arrestar y que si el acusado deseaba llevárselo tendría que matarlo primero. Entonces el acusado hizo un disparo que hirió a Cosme y luego insistió en que éste fuera con él arrestado, pero Cosme se negó a moverse del lugar, insistiendo en que el acusado tendría que matarle. El acusado disparó nuevamente hiriendo a Cosme en el estómago, y éste murió a consecuencias de las heridas. Hubo prueba tendente a demostrar también que después de los disparos el acusado continuó haciendo ostentación del arma. Evidentemente se registró a la víctima y no se halló arma alguna sobre su persona.

El fiscal puso en la silla de los testigos a María Paz, la supuesta esposa del interfecto, con quien vivía. Su declaración tendió a demostrar que Cardona la había enamorado y que ella rechazaba sus requiebros. La corte comenta que esta prueba no fué presentada en forma alguna para sostener los hechos ocurridos el día de los disparos, sino meramente para demostrar los móviles del acusado.

La teoría de la defensa fué que un día o dos antes de los tiros el acusado fué a la casa de Juan Cosme para averiguar respecto a ciertos disparos que había oído aquel día o el día antes; que con motivo de esta investigación se cruzaron algunas palabras entre la esposa de Cosme y el acusado, al extremo de que ella manifestó al acusado que sería mejor que él hablara con su marido, ya que éste era hombre y podía contestarle. El hecho fué, según el acusado, que mientras

hablaba con dos de los testigos que declararon durante el juicio, llegó Cosme, y poniéndole la mano en el hombro al acusado le dijo que deseaba hablarle e hizo esto con coraje y de manera agresiva. El acusado le preguntó entonces qué deseaba y el occiso le dijo que si tenía algo que decir debía decírselo a él; que el acusado trató de calmarle, pero que el interfecto se llevó la mano al bolsillo trasero y el acusado entonces hizo un disparo que no. causó daño alguno e inmediatamente hizo el segundo disparo que produjo la muerte a Cosme.

Conforme sucede con frecuencia, en ninguna parte de su alegato el apelante aduce los hechos relativos a los disparos o aun a la teoría de defensa propia. Creemos que en este caso el fiscal pudo haberlo hecho así, pero desde luego el deber por parte suya no es tan fuerte.

█ Los señalamientos de error relativos a las instrucciones son contestados específicamente por el fiscal en su alegato. Éstos rezaban así:

"3. La Corte cometió manifiesto error en sus instrucciones al jurado al repetir y entrelazar la teoría del Fiscal con el resumen que pasara a hacer de la prueba de cargo, confundiendo así al jurado e induciéndolo a creer que el fiscal había probado cumplidamente la teoría de su caso.

"4. La corte cometió manifiesto error en sus instrucciones al jurado expresando hechos hipotéticos sobre los que no se presentara prueba alguna.

"5. La Corte cometió manifiesto error al instruir al jurado en el sentido de que si se ataca a un individuo con un objeto que cualquier persona razonable pueda pensar que puede causar necesariamente la muerte, y la muerte se causa, en ausencia de premeditación y deliberación, ese solo hecho es suficiente para calificar el delito de asesinato en segundo grado.

"6. La Corte cometió manifiesto error en sus instrucciones al jurado, por razón de la forma imprecisa, inexacta y confusa en que trató las cuestiones de derecho relativas a la diferencia entre el delito de asesinato y el de homicidio.

"7. La Corte cometió manifiesto error en sus instrucciones al jurado cuando al tratar cuestiones de derecho expuso cuándo en el

curso de un proceso criminal incumbe el peso de la prueba al acusado.

"8. La Corte cometió manifiesto error en sus instrucciones al jurado al expresar el modo en que debe el jurado apreciar las declaraciones de testigos que han faltado a la verdad, siendo dichas instrucciones insuficientes.

"9. La Corte cometió manifiesto error en sus instrucciones al jurado por la forma y manera menospreciativa en que entró a considerar el *issue* de la defensa propia planteado por el acusado.

"10. La Corte cometió manifiesto error en sus instrucciones al jurado al expresar que 'contrario a la demás teoría penal en que el acusado se presume inocente y que hay que probarle su culpabilidad más allá de toda duda razonable, cuando se trata de la defensa propia o cualquier otra defensa que justifique el homicidio, el peso de la prueba recae entonces sobre el acusado.'

"11. La Corte cometió manifiesto error en sus instrucciones al jurado al opinar y llegar a una conclusión en relación con la creencia que pudo el acusado tener en cuanto al grado de peligro en que se hallaba.

"12. La Corte cometió manifiesto error al instruir al jurado con relación al significado y concepto legal de la 'provocación.'

"13. La Corte cometió manifiesto error al no comprender en el resumen de la evidencia que hiciera en sus instrucciones al jurado una indicación sobre aquella prueba que tendía a establecer una súbita pendencia y un arrebato de cólera.

"14. La Corte cometió manifiesto error al no tomar en consideración en sus instrucciones al jurado evidencia importantísima presentada por la defensa y en la cual fundaba el acusado la teoría de su caso.

"15. La Corte cometió manifiesto error al darle énfasis a aquellas reglas y disposiciones legales que podían perjudicar al acusado, suprimiendo o tratando ligeramente las que pudieran beneficiarle."

No se llamó la atención de la corte a ninguno de los supuestos errores, y no estamos convencidos de que ninguno de ellos fué fundamental. Seguiremos la jurisprudencia sentada en los siguientes casos: *Pueblo* v. *Maldonado,* 45 D.P.R. 417; *Pueblo* v. *Mercado,* 46 D.P.R. 152; *Pueblo* v. *Nieves,* 48 D.P.R. 153; *Pueblo* v. *Hernández,* 49 D.P.R. 419. Al juez debe dársele siempre una oportunidad para corregirse.

■ La cuestión más importante que nos ha producido alguna duda es el ataque que se hace a la jurisdicción de la corte inferior. Después de haberse tomado juramento al jurado. el acusado solicitó permiso para retirar su alegación de inocencia y para que se le permitiera objetar a la jurisdicción, fundado en que él era un funcionario público y porque en su consecuencia el proceso debió haberse iniciado mediante acusación del gran jurado. El fiscal de distrito inmediatamente adujo que la cuestión era suscitada demasiado tarde y luego en el curso de la discusión manifestó e insistió en que las actuaciones de Cardona no surgían de sus deberes como guardabosque sino de una cuestión personal. Se ha insistido principalmente en la corte inferior y en ésta en que el acusado no era un funcionario público.

Estamos convencidos de que un policía es un funcionario público. *Harris* v. *Mayor*, 133 A. 888, y casos .en él citados. En el primero el acusado era un policía de parques.

La corte inferior resolvió que el acusado no era un funcionario público. Se discutieron varias cuestiones, mas el punto principal fué que el apelante era más bien un empleado que un funcionario. Podemos dudar de que Cardona fuera en realidad un funcionario público. No hubo prueba tendente a demostrar que tuviera autoridad para portar un arma, a no ser el derecho que quizá tenga un celador para proteger la propiedad de su principal.

■ Ahora bien, aunque la cuestión no ha sido discutida en el alegato nos inclinamos a convenir con el fiscal en que si debía darse crédito a la prueba de El Pueblo, el acusado disparó, no en el cumplimiento de algún deber impuéstole por la ley o por su patrono, sino por razón de un móvil personal. La corte y el jurado tenían derecho a creer que él usaba indebidamente su supuesta autoridad para arrestar y presentar un caso de resistencia a la autoridad por parte de Cosme. En realidad un policía no estaría cumpliendo con los deberes de su cargo si tratara de hacer un arresto

bajo circunstancias similares. El supuesto delito, de haberlo, era menos grave y el acusado no tenía poder para arrestar. Ninguna persona tiene derecho a disparar ni matar meramente debido a una resistencia verbal a supuesta autoridad y por tanto la corte y el jurado tenían derecho a creer por la prueba que Cardona no actuaba en el cumplimiento de sus deberes. Esta cuestión fué dejada a la corte y no se trató de obtener instrucción alguna en relación con la misma.

■ Igualmente convenimos con la sugestión del fiscal en que el acusado renunció su derecho a impugnar la jurisdicción de la corte. No encontramos jurisprudencia sobre la cuestión, probablemente porque en estados como California, el gobierno tiene la opción de proceder mediante acusación del gran jurado o del fiscal cuando está envuelto un delito grave, y en el resto de los Estados Unidos el estatuto exige que la acusación se haga por el gran jurado, o ésa es la ley común. En el Norte la cuestión depende de la Constitución local o federal, la disposición específica de la última de las cuales se ha resuelto que no es aplicable a Puerto Rico en *People* v. *Muratti*, 245 U. S. 639, y *People* v. *Balzac*, 258 U. S. 298.

Hasta la fecha en que se aprobó la ley de 1919 todas las acusaciones por delitos graves eran iniciadas mediante acusación redactada por el fiscal. En 1919 se aprobó una ley (núm. 58 de 1919, pág. 303) que exigía la presentación de una acusación por el gran jurado en todos los casos de delitos graves. Sin embargo, en 1925 (Leyes de ese año, página 789) se aprobó la siguiente ley:

"No. 98

"LEY

"Para enmendar la sección 1 de la 'Ley estableciendo el Gran Jurado, regulando sus procedimientos, facultades y deberes, determinando la forma de las acusaciones del Gran Jurado, la presentación y lectura de las mismas y los procedimientos subsiguientes a la presentación,' aprobada en junio 18 de 1919.

"*Decrétase por la Asamblea Legislativa de Puerto Rico:*

"Sección 1.—Que la sección 1 de la Ley No. 58 de junio 18 de 1919, titulada 'Ley estableciendo el Gran Jurado, regulando sus procedimientos, facultades y deberes, determinando la forma de las acusaciones del Gran Jurado, la presentación y lectura de las mismas y los procedimientos subsiguientes a la presentación,' queda por la presente enmendada de modo que lea así:

" 'Sección 1.—Todo delito grave (*felony*) que se impute a un funcionario público por razón de actos realizados en el ejercicio de sus funciones deberá ser perseguido mediante acusación del Gran Jurado presentada ante la corte que tenga jurisdicción en el caso.

" 'Todos los demás delitos se perseguirán en la forma prescrita por el Código de Enjuiciamiento Criminal.'

"Sección 2.—Toda ley o parte de ley que se oponga a la presente, queda por ésta derogada.

"Sección 3.—Esta Ley empezará a regir a los noventa días después de su aprobación."

*(Aprobada el 28 de agosto de 1925.)*

De suerte, pues, que desde entonces los procesos criminales son iniciados mediante acusación fiscal, excluyendo la excepción de la ley anterior.

Frecuentemente puede surgir una renuncia cuando no se define claramente la línea divisoria. En otras palabras, cuando se trata de trazar una línea y un caso puede fácilmente caer en uno u otro lado, la parte interesada en sostener determinada posición puede más fácilmente renunciar la cuestión. Esto tiene un doble aspecto. En primer lugar, era dudoso si el acusado era o no un funcionario público. En segundo lugar, la línea de demarcación entre una acusación del gran jurado y una acusación fiscal no está tan claramente trazada en Puerto Rico, donde no tenemos limitación constitucional sobre el poder del fiscal para proceder por acusación propia más bien que por acusación del gran jurado. ¿Cuál es la idea principal de una acusación del gran jurado? Lo es dar a los convecinos de un acusado la oportunidad de negarse a acusar. Un fiscal, con los hechos que tenemos ante nos, puede haber creído erróneamente, en nuestra opi-

nión, bien que el acusado no era un funcionario público o que no actuaba en el desempeño de sus deberes y decidir no someter la cuestión a un gran jurado. Entonces al presentarse el caso a la corte de distrito, sería el deber del acusado oponerse prontamente y no esperar hasta que el jurado estuviera constituído y llamados los testigos.

El acusado se opuso seriamente a que María Paz ocupara la silla de los testigos para prestar declaración en el caso. Convenimos con la corte inferior y con el fiscal en que ella era pertinente para demostrar el motivo del delito.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.

EN MOCION DE RECONSIDERACION<br>Julio 6, 1936

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Este es un caso en que luego de terminar de ofrecerse la prueba de El Pueblo, hubiera sido difícil creer que el acusado hubiese matado a Cosme meramente porque éste se negó a dejarse arrestar o porque le dijo a Cardona que si tenía algo que decirle que se lo dijera a él. Normalmente no parece posible o probable que un hombre dispare contra otro bajo circunstancias tan relativamente triviales. Por tanto, el fiscal se sintió compelido a demostrar que había un motivo más grave escondido en el cerebro de Cardona. Estamos muy contestes con las citas de Wigmore's Code of Evidence, Segunda Edición, regla 179, citádanos por el acusado, al efecto de que prueba que no sea muy pertinente o material a los hechos en controversia no debe ser admitida cuando su resultado casi inevitable o cuando su probabilidad es enardecer al jurado o acrecentar sus pasiones. En nuestra opinión principal dijimos simplemente que esta clase de prueba era admisible para demostrar el motivo. Desde luego, prueba del motivo puede ser omitida. Aquí la misma se hizo muy importante por las razones que ya hemos expuesto. El ver-

dadero fin para el cual se ofreció esta evidencia no fué enardecer la mente del jurado sino para presentar una demostración o probabilidad adicional de un corazón maligno. El fiscal negó que tuviera intención alguna de probar los hechos fundamentales de su caso con la declaración de María Paz, la supuesta esposa del occiso. No obstante, como el apelante había alegado la defensa propia, el jurado, parcialmente de la prueba sobre motivo, tenía derecho a no creer tal teoría. Si, conforme sostienen las autoridades, es admisible prueba para demostrar el motivo, ella lo era en este caso.

Allá a principios de nuestra opinión principal, dijimos inadvertidamente, al hacer un resumen de la prueba de cargo, que el primer disparo hecho por el acusado hirió a Cosme. No sabemos cómo se nos pasó este error porque teníamos claramente la idea, y aún la tenemos, de que el primer disparo no causó daño alguno. Fuera o no correcta tal manifestación, ella no podría desempeñar un papel importante en este caso, especialmente ya que se admite que luego de hacer el primer disparo, el acusado inmediatamente volvió a disparar.

El apelante dice que el letrado del acusado, que se vió precisado a ausentarse de la sala de sesiones antes de que se transmitieran las instrucciones había solicitado de la corte que le anotara una excepción general a las instrucciones, y ésta así lo hizo. No podemos ver cómo físicamente puede excepcionarse un error antes de cometerse el mismo. Surge un error durante la vista de una causa, el acusado llama la atención de la corte hacia el mismo y al dictar ésta una resolución adversa, se anota una excepción. En este caso no se llamó la atención de la corte a ningún error posible. Al ausentarse voluntariamente de la sala de sesiones, sin solicitar que se pospusiera el juicio, el letrado del acusado corrió el riesgo de que las instrucciones pudieran ser incorrectas. Era el deber de los letrados estar presentes mientras se trasmitían las instrucciones o correr el riesgo, según ya hemos dicho. Entendemos, y así lo resolvemos, que ningún juez puede

modificar la ley a este respecto y permitir que se anoten excepciones en los autos antes de haber tenido la oportunidad de corregir una resolución. Además, las instrucciones no son una forma de incorporar la prueba o los otros procedimientos habidos en la corte y hemos hecho una búsqueda en los autos con el propósito de hallar cualquier referencia al hecho de que el letrado del acusado, al retirarse, solicitó anticipadamente que se anotara una excepción a algo que no había ocurrido.

Supongamos que el abogado se hubiese ausentado antes de terminarse la prueba de refutación y solicitado de la corte que le anotara una excepción a la admisión de toda la prueba de cargo. ¿Podría beneficiarle tal excepción? El caso no es distinto.

El fiscal no tuvo oportunidad de ser oído en apoyo de la corrección de las instrucciones objetadas, o de sugerir por sí mismo una reforma al señalársele un error. No vemos que el caso sea distinguido de la jurisprudencia que exige que el apelante dé a la corte la oportunidad de corregirse o de que los errores planteados y las excepciones tomadas sean específicas.

A nuestro juicio, desde cualquier ángulo que se mire el caso, el acusado estaría en peor posición que si al final de las instrucciones tan sólo las hubiera excepcionado generalmente. ¿Por qué tiene un letrado que se ausenta de la corte y que se anota una excepción general que estar en mejor posición que los que allí permanecen y que en tal forma excepcionan?

*Debe declararse sin lugar la moción.*